**Affirmed and Opinion filed May 30, 2013.**



In the

# Fourteenth Court of Appeals

## NO. 14-12-00369-CV

## DUNHAM ENGINEERING, INCORPORATED, Appellant

## V.

## THE SHERWIN-WILLIAMS COMPANY, Appellee

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 65387**

## O P I N I O N

In this interlocutory appeal, Dunham Engineering, Inc. (DEI) appeals the trial court's denial of its motion to dismiss the Sherwin-Williams Co.'s (Sherwin-Williams) claims of intentional interference with prospective business relationships, business disparagement, and product disparagement based on DEI's actions in connection with a municipal water tower project. In three issues, DEI argues that the certificate-of-merit affidavit Sherwin-Williams attached to its

original petition fails to meet the substantive requirements of section 150.002 of the Texas Civil Practice and Remedies Code and that the trial court should have dismissed Sherwin-Williams' case with prejudice. Finding no abuse of discretion, we affirm the trial court's order denying DEI's motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In fall 2009, the City of Lake Jackson (the City) hired DEI to design and produce engineering plans and specifications, and a draft set of contract documents for the repainting and rehabilitation of a 500,000-gallon water tower (the Project). The City also hired DEI to advertise for contractor bids on, and assist the City in reviewing the bids and in selecting the winning bid for, the Project.

In its specifications for the Project, DEI specified that Tnemec Co., Inc.'s (Tnemec) paint products were to be used. The specifications indicated that if a contractor submitting a bid wanted to substitute another manufacturer's paint products, then the contractor needed to apply to DEI and request substitution, and that DEI has final authority in approving a proposed substitute. The City advertised and solicited competitive bids on the Project. During the public bidding process, Sherwin-Williams submitted its paint products to DEI and requested substitution of Sherwin-Williams' products for Tnemec's products. DEI—in particular, DEI's president and licensed professional civil engineer, Jimmy Dunham—informed the City's director of public works that DEI intended to turn down Sherwin-Williams' request because Dunham did not consider Sherwin-Williams' products to be "equal" to Tnemec's products. DEI then rejected Sherwin-Williams' request.

Sherwin-Williams filed suit against DEI, alleging counts of intentional interference with prospective business relationships, business disparagement, and product disparagement. To its original petition, Sherwin-Williams attached a

2

certificate-of-merit affidavit from James O'Connor, a licensed professional civil engineer and engineering professor at the University of Texas at Austin.

In his affidavit, O'Connor stated that he was familiar with the legal requirements and industry customs regarding competitive bidding on Texas public works projects. Based on O'Connor's review of DEI's plan specifications, he concluded that specifications for the Project required competitive bidding, DEI's specification on paint products was a closed or sole-source specification, and DEI's paint specification did not allow for open competition and thus did not conform to Texas law. O'Connor also opined that, by drafting and soliciting Project bids based on the sole-source specification, DEI and Dunham violated their duty under the Texas Board of Professional Engineers' rules. O'Connor also reviewed Sherwin-Williams' request that its products be considered as a substitute, Dunham's communications with the City, and DEI's response rejecting Sherwin-Williams' products. He opined that DEI's rejection of Sherwin-Williams' products as a proposed substitute was in error from an engineering prospective because the rejection was based on what product has the highest test results, not compliance with a stated desired minimum value. O'Connor further opined that DEI and Dunham disparaged Sherwin-Williams and its products when they reported to the City that Sherwin-Williams' paint products were not "equal."

DEI filed a motion to dismiss pursuant to section 150.002(e) of the Texas Civil Practice and Remedies Code, arguing that Sherwin-Williams' certificate-of-merit affidavit failed to meet the requirements of section 150.002. The trial court denied DEI's motion, and DEI filed this interlocutory appeal.

DEI brings three issues on appeal. First, DEI argues Sherwin-Williams' certificate of merit fails to comply with section 150.002(a)(3) because O'Connor's affidavit does not demonstrate that he is knowledgeable in the area of practice of

3

DEI. Second, DEI argues that Sherwin-Williams' certificate of merit fails to comply with section 150.002(b) because O'Connor's affidavit does not set forth the unlawful action, error, or omission, and the factual basis for each claim Sherwin-Williams alleged against DEI in its original petition. Third, DEI thus contends that the trial court abused its discretion in not dismissing Sherwin-Williams' claims with prejudice. In a cross-issue, Sherwin-Williams argues that it was not required to file a certificate-of-merit affidavit with regard to its intentional tort claims. We conclude that section 150.002 applies to Sherwin-Williams' claims and that the trial court did not abuse its discretion in concluding Sherwin-Williams' certificate-of-merit affidavit complies with section 150.002's requirements.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

An order denying a motion to dismiss for failure to file a certificate of merit in accordance with section 150.002 is immediately appealable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(f) (West 2012). We review a trial court's order on a motion to dismiss under section 150.002 for an abuse of discretion. *Epco Holdings, Inc. v. Chicago Bridge & Iron Co.*, 352 S.W.3d 265, 269 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd) (citing *Sharp Eng'g v. Luis*, 321 S.W.3d 748, 752 (Tex. App.—Houston [14th Dist.] 2010, no pet.)); *Benchmark Eng'g Corp. v. Sam Houston Race Park*, 316 S.W.3d 41, 44 (Tex. App.—Houston [14th Dist.] 2010, pet. dism'd by agr.) (citations omitted). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court does not demonstrate an abuse of discretion. *Benchmark*, 316 S.W.3d at 44. However, the trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *Id.* A trial court also abuses its discretion if it fails to analyze or apply

4

the law correctly. *Epco Holdings*, 352 S.W.3d at 269; *Benchmark*, 316 S.W.3d at 44 (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

We review matters of statutory construction de novo. *Epco Holdings*, 352 S.W.3d at 269; *Benchmark*, 316 S.W.3d at 44. We construe statutory language to ascertain and effectuate legislative intent, and we look to the statute's plain meaning because we presume that the Legislature intends the plain meaning of its words. *Epco Holdings*, 352 S.W.3d at 269–70 (citing *Sharp Eng'g*, 321 S.W.3d at 750). We view statutory terms in context, giving them full effect. *Benchmark*, 316 S.W.3d at 45 (citation omitted). We presume that every word of a statute was used for a purpose, and every omitted word was purposefully not chosen. *See Epco Holdings*, 352 S.W.3d at 270; *Benchmark*, 316 S.W.3d at 44–45. "Finally, in determining the plain meaning of a statute, we read the words in context and construe the language according to the rules of grammar and common usage." *Benchmark*, 316 S.W.3d at 45 (citing TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005)).

Under the facts of this case, the pertinent version of section 150.002 is the 2009-amended version. Section 150.002 provides, in relevant part:

> (a) In any action . . . for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party . . . licensed professional engineer . . . who:
>> (1) is competent to testify;
>> (2) holds the same professional license or registration as the defendant; and
>> (3) is knowledgeable in the area of practice of the defendant and offers testimony based on the person's:
>>> (A) knowledge;
>>> (B) skill;

5

(C) experience;

(D) education;

(E) training; and

(F) practice.

(b) The affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim. The third-party . . . licensed professional engineer . . . shall be licensed or registered in this state and actively engaged in the practice of . . . engineering . . . .

. . .

(e) The plaintiff's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant. This dismissal may be with prejudice.

(f) An order granting or denying a motion for dismissal is immediately appealable as an interlocutory order.

. . .

TEX. CIV. PRAC. & REM. CODE ANN. § 150.002.

To the extent that we discuss case law interpreting it, the 2005 version of section 150.002 provides:

(a) In any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect, registered professional land surveyor, or licensed professional engineer competent to testify, holding the same professional license as, and practicing in the same area of practice as the defendant, which affidavit shall set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim. The third-party professional engineer, registered professional land surveyor, or licensed architect shall be licensed in this state and actively engaged

6

in the practice of architecture, surveying, or engineering.

Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70, *amended by* Act of May 27, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1991–92.

## III.     ANALYSIS

### A. Sherwin-Williams' intentional tort claims are subject to section 150.002.

We first address the threshold cross-issue raised by Sherwin-Williams. Sherwin-Williams argues that its intentional tort claims are not subject to section 150.002's requirements because the claims do not involve negligence or otherwise arise from DEI's provision of professional services. We disagree.

#### 1.  Each theory of recovery

Under the 2009 version, as well as the 2005 version, a certificate of merit is required "[i]n any action . . . for damages arising out of the provision of professional services by a licensed or registered professional." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a). Under the 2009 version, "[t]he affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed . . . professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim." *Id.* § 150.002(b). This statutory language is broader, as compared to the language included in the 2005 version of section 150.002, which provides that the "affidavit shall set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim." *See* Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70, *amended by* Act of May 27, 2009, 81st Leg., R.S.,

7

ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1991–92; *Benchmark*, 316 S.W.3d at 45 n.2 ("S.B. 1201 broadened the scope of chapter 150 by . . . expanding the affidavit requirement to set forth 'for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service . . . .'").

Although in *Benchmark*[1] we observed that "[t]he legislature has amended chapter 150 three times since it was enacted in 2003 and sought to broaden its application in each amendment," 316 S.W.3d at 45, this court has not directly considered the scope of applicability of the 2009-amended section 150.002. In *Pro Plus, Inc. v. Crosstex Energy Services, L.P.*, the First Court of Appeals considered whether the 2009 version of section 150.002 applied to a plaintiff's breach-of-contract claim against a defendant engineering firm, and concluded that it did. 388 S.W.3d 689, 706–08 (Tex. App.—Houston [1st Dist.] 2012, pet. granted). The *Pro Plus* court discounted the 2005-version case law as "of limited value," and observed that "[i]n 2009, the Texas Legislature amended the Certificate of Merit Statute in direct response to the holdings of intermediate appellate courts, which limited the application of the statute to negligence claims." *Id.* at 707. Instead, the court considered the plain language of the 2009 version in determining that section 150.002 applied to plaintiff's breach-of-contract claim. *Id.* at 707–08 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a) & (b)); *see also Pelco Constr., Inc. v. Dannenbaum Eng'g Corp.*, —S.W.3d—, No. 01-12-00421-CV, 2013 WL 1488025, at *8 (Tex. App.—Houston [1st Dist.] Apr. 11, 2013, no pet. h.) (applying 2009 version of section 150.002 to fraudulent-inducement claim).

Other courts of appeals have applied the 2009 version of section 150.002 to

---

[1] In *Benchmark*, discussed further *infra*, we considered whether the plaintiff's certificate of merit met the substantive requirements of the 2005 version of section 150.002, but not section 150.002's scope of applicability.

claims not involving negligence. *See, e.g., Robert Navarro & Assocs. Eng'g, Inc. v. Flowers Baking Co. of El Paso, LLC*, 389 S.W.3d 475, 479 (Tex. App.—El Paso Sept. 26, 2012, no pet.) (construing section 150.002, and concluding that statute requires that affidavit must address each theory of recovery, including breach of contract and negligent misrepresentation); *M-E Engineers, Inc. v. City of Temple*, 365 S.W.3d 497, 505–06 (Tex. App.—Austin 2012, pet. denied) (concluding that the 2009 amendment "served to eliminate any continuing debate or uncertainty as to whether prior versions of the certificate-of-merit requirement were triggered by damage claims predicated on professional errors or omissions that were couched in theories other than negligence"); *cf. Jay Miller & Sundown, Inc. v. Camp Dresser & McKee Inc.*, 381 S.W.3d 635, 644 (Tex. App.—San Antonio 2012, no pet.) (noting in dicta that 2009 version of section 150.002 would apply to plaintiff's tortious-interference-with-contract claim).

Sherwin-Williams primarily relies on case law construing the 2005 version of section 150.002 to limit its applicability to claims involving negligence.[2] But in light of the broadened language included in the 2009 amendment, these cases have very limited applicability when construing the 2009 version of section 150.002. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(b).

When construing section 150.002's language, we must presume that the legislature purposefully included the word "each" to modify "theory of recovery

---

[2] *See, e.g.*, *JJW Devel., L.L.C. v. Strand Sys. Eng'g, Inc.*, 378 S.W.3d 571, 578, 581 (Tex. App.—Dallas 2012, pet. filed); *Sanders v. Wood*, 348 S.W.3d 254, 257–58, 261 (Tex. App.—Texarkana 2011, no pet.); *Natex Corp. v. Paris Indep. Sch. Dist.*, 326 S.W.3d 728, 735 (Tex. App.—Texarkana 2010, pet. dism'd w.o.j.); *Curtis & Windham Architects, Inc. v. Williams*, 315 S.W.3d 102, 108 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Kniestedt v. Sw. Sound & Elecs., Inc.*, 281 S.W.3d 452, 455 (Tex. App.—San Antonio 2007, no pet.); *Landreth v. Las Brisas Council of Co-Owners, Inc.*, 285 S.W.3d 492, 500 (Tex. App.—Corpus Christi 2009, no pet.) (discussing *Gomez v. STFG, Inc.*, No. 04-07-00223-CV, 2007 WL 2846419 (Tex. App.—San Antonio Oct. 3, 2007, no pet.) (mem. op.)); *Gomez*, 2007 WL 2846419, at *3.

for which damages are sought." The ordinary meaning and common usage of "each" read in context here means no "theory of recovery" is exempt or excluded from section 150.002's requirement that the affidavit "set forth specifically . . . the negligence, if any, or other action, error, or omission of the licensed or registered profession in providing the professional service . . . and the factual basis for each such claim." *See id.* We also must presume that the legislature by use of the phrase "if any" and the conjunctive "or" contemplated the very situation where a plaintiff does not complain of the licensed professional's negligence, but rather complains of some "other act, error, or omission" by the licensed professional. Nothing in the statutory language limits the nature of the complained-of behavior of the licensed professional only to negligence.

## 2. Provision of professional services

Sherwin-Williams contends that an engineer committing an intentional tort is not engaged in providing professional services, and therefore its intentional tort claims do not require a certificate of merit. Sherwin-Williams again relies on 2005-version case law to support its position. But we do not find these cases persuasive given their interpretation that the 2005 version limits the certificate-of-merit-requirement to claims involving allegations of negligence.

Here, Sherwin-Williams asserted claims seeking damages from DEI. To determine if a certificate of merit was required under section 150.002, we must decide whether DEI and Dunham were licensed or registered professionals under the statute, and if so, whether Sherwin-Williams' claimed damages arose from DEI's and Dunham's provision of professional services. *See id.* § 150.002(a). As a licensed professional engineer, Dunham qualifies as a "licensed . . . professional" for purposes of chapter 150. *See id.* § 150.001(1). Because DEI is the firm in which Dunham practices, DEI also qualifies as a "licensed professional." *See id.*

10

Contrary to Sherwin-Williams' assertion, the issue is not whether the alleged tortious acts constituted the provision of professional services, but rather whether the tort claims arise out of the provision of professional services. *Pelco Constr.*, — S.W.3d—, 2013 WL 1488025, at *6 (explaining that section 150.002 "does not require the specific acts creating the claim for the tort also constitute the provision of professional services" but instead "the acts creating the claim must 'aris[e] out of the provision of professional services'").

In its petition, Sherwin-Williams alleged that "[t]he City hired DEI to provide professional engineering services for the Project." Sherwin-Williams further alleged that "[a]s part of their professional services, Dunham, acting as president of DEI, prepared or directed the preparation of plans and specifications for the Project," including specifying the use of Tnemec's paint products. Sherwin-Williams alleged DEI and Dunham had been made aware that Texas law precludes using a closed paint specification "such as the Project paint specification prepared by DEI/Dunham." Sherwin-Williams alleged that it submitted its paint products to DEI for approval on the Project as "equal" to Tnemec's products. According to Sherwin-Williams, DEI rejected Sherwin-Williams' substitution application as not "equal" by letter and published this letter to the City. Sherwin-Williams alleged that "the City opted to defer to and relied upon the professional judgment of DEI and Dunham when specifying Tnemec as a sole source and refusing to approve Sherwin-Williams as Tnemec's 'equal'" and awarded the Project contract to a contractor whose bid included Tnemec's products. These allegations clearly indicate that Sherwin-Williams' tort claims arise out of DEI's provision of professional services.

Although Sherwin-Williams asserts that it should not be required to file a certificate of merit because it alleges that DEI violated the law rather than a

11

professional standard of care, section 150.002 does not provide for any exception when a plaintiff complains of such violation of law.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002.  Moreover, Sherwin-Williams' argument that a certificate of merit has no relevance to the intentional torts it alleges and thus would not aid the trial court is unpersuasive because it relies on cases interpreting the 2005 version of section 150.002 as only requiring a certificate of merit for negligence claims.  The current section 150.002 requires that a certificate-of-merit affidavit set forth "for each theory of recovery for which damages are sought, the . . . action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim."  *Id.* § 150.002(b).  Requiring Sherwin-Williams to file a certificate of merit here is not irrelevant, but rather is entirely consistent with the statute.

All of Sherwin-Williams' claims against DEI pertain to its preparation of the Project plans and specifications, and DEI's actions in evaluating and providing its (negative) opinion of Sherwin-Williams' paint products for the Project; thus, these claims arise out of the provision of professional services by a licensed or registered professional under the statute.  Therefore, we conclude that Sherwin-Williams was required to submit a certificate of merit with its complaint in this case, and we overrule Sherwin-Williams' cross-issue.

## B. Sherwin-Williams' certificate-of-merit affidavit complies with section 150.002(a)(3).

In its first issue, DEI argues Sherwin-Williams' certificate-of-merit affidavit fails to comply with section 150.002(a)(3) because it does not demonstrate that O'Connor is knowledgeable in the area of practice of DEI.  That is, DEI contends

O'Connor's affidavit had to demonstrate that he is knowledgeable in "professional engineering services related to water storage tanks and corrosion control," as alleged to be DEI's practice in Sherwin-Williams' petition. We cannot agree with DEI's overly narrow construction.

We again consider the difference in language between the 2005 and 2009 versions of the statute. The 2009 version requires that the plaintiff file an affidavit of a third-party licensed professional engineer who "is knowledgeable in the area of practice of the defendant." *Id*. § 150.002(a)(3). The 2005 version requires that the plaintiff file an affidavit of a third-party licensed professional engineer who "practic[es] in the same area of practice as the defendant." Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70, *amended by* Act of May 27, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1991–92. Although in *Benchmark* we were not construing the 2009 version, we expressly noted that this change in language reflected a "reduc[tion] in the affiant's qualification requirement." 316 S.W.3d at 45 n.2.

Notwithstanding this "reduced" qualification requirement, DEI argues because O'Connor did not state in his affidavit that he practices an engineering specialty remotely associated with DEI's practice, did not include a resume, did not describe previous work on water-tank projects, and did not indicate that he previously has drafted specifications for a water-tank rehabilitation project, his affidavit fails the "strict" requirements of section 150.002(a)(3). Essentially, relying on 2005-version case law,[3] what DEI proposes is that section 150.002(a)(3) requires that we evaluate certificates of merit on the basis of engineering specialties. However, the plain language of the 2009 version of section

_____

[3] *E.g., Landreth*, 285 S.W.3d at 500; *Belvedere Condos. v. Meeks Design Group, Inc.*, 329 S.W.3d 219, 221 (Tex. App.—Dallas 2010, no pet.).

13

150.002(a)(3), which we are bound to apply, specifically states only that the engineer opining in the certificate of merit be "knowledgeable in the area of practice of the defendant." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)(3). The statute does not state that the affiant's knowledge must relate to the same, much less the same specialty, area of practice. *Id.*; *see Morrison Seifert Murphy, Inc. v. Zion*, 384 S.W.3d 421, 426–27 (Tex. App.—Dallas 2012, no pet.) (citing *Benchmark*, 316 S.W.3d at 49, and concluding that plain language of 2009 version of section 150.002(a) does not "require[] the opining professional to demonstrate expertise in the defendant's sub-specialty"); *cf. Benchmark*, 316 S.W.3d at 49 (interpreting 2005 version of section 150.002(a) and rejecting defendant's argument that affiant was required to practice in engineering sub-specialty of "drainage and drainage design"). Nor does the statute require submission of a resume. TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)(3). Although DEI faults O'Connor for not explicitly stating in his affidavit that "he is practicing in the same area of practice as [d]efendant," again, the statute no longer requires that the affiant "practice" in the "same" area. *Id.* Moreover, the statute does not require the affiant explicitly establish or address that he is "knowledgeable in the area of practice of the defendant" on the face of the certificate. *Id.*; *see M-E Eng'rs*, 365 S.W.3d at 503. Indeed, section 150.002 "imposes no particular requirements or limitations as to how the trial court ascertains whether the affiant possesses the requisite knowledge." *See M-E Eng'rs*, 365 S.W.3d at 503.

DEI further contends that, despite Sherwin-Williams' insistence that the "crux" of its case involves improper engineering practices in conjunction with competitive bidding on a public works project, the actual engineering practice at issue is whether DEI and Dunham's recommendations regarding Sherwin-Williams' products were false. Sherwin-Williams may need to show that its paint

products could be considered an "equal" substitute to ultimately prove that "DEI's exclusion of [Sherwin-Williams] from competing to supply paint materials was unlawful" and DEI's recommendations to the City involved "false, disparaging words." However, at the certificate-of-merit stage, before discovery and before other dispositive motions are available, the plaintiff is not required to fully "marshal his evidence." *See CBM Eng'rs, Inc. v. Tellepsen Builders, L.P.*, — S.W.3d—, No. 01-11-01033-CV, 2013 WL 125713, at *6 (Tex. App.—Houston [1st Dist.] Jan. 10, 2013, pet. filed) (also noting that section 150.002 does not foreclose defendant from later filing motions to exclude expert testimony and for summary judgment); *M-E Eng'rs*, 365 S.W.3d at 504.

In this case, the trial court had before it O'Connor's sworn certificate indicating that he holds a Ph.D. in civil engineering, is licensed by the State of Texas as a professional engineer with the designation of "civil," and currently serves as a professor in project management within the civil, architectural, and environmental engineering department at the University of Texas. This sworn certificate also indicated that O'Connor, "[t]hrough [his] practice, research, and teaching, [is] familiar with both the legal requirements and industry customs regarding competitive bidding on public works projects, particularly in the State of Texas." In addition, Sherwin-Williams alleged, and DEI does not dispute, that DEI provides professional engineering services and Dunham is a licensed professional engineer in Texas, and that DEI and Dunham were involved in the preparation and direction of plans and specifications for a Texas public works project. Finally, Dunham's credentials indicate that he is a professional engineer licensed in Texas who holds a master's in civil engineering. On this record, we cannot conclude the trial court abused its discretion in determining that O'Connor "is knowledgeable" in DEI's area of practice, as required by section 150.002(a)(3).

15

Thus, we overrule DEI's first issue.

## C. Sherwin-Williams' certificate of merit complies with section 150.002(b).

In its second issue, DEI argues that Sherwin-Williams' certificate of merit affidavit fails to comply with section 150.002(b) because it does not specifically set forth the unlawful action, error, and omission, and the factual basis for each claim Sherwin Williams alleges against DEI. DEI essentially re-argues that O'Connor has failed to address what DEI describes as the "crux" of the entire case—whether DEI's recommendations to the City regarding the suitability of Sherwin-Williams' paint products for the needs of the Project were false.

The statute does not define "factual basis," but the purpose of the certificate of merit "is to provide a basis for the trial court to conclude that the plaintiff's claims are not frivolous." *See CBM Eng'rs*, —S.W.3d—, 2013 WL 125713, at *5.[4] In *Benchmark*, we concluded that the plain meaning of "factual basis" under the 2005 version of the statute "requires an affiant to describe the facts giving rise to the claim."[5] 316 S.W.3d at 48. As discussed *supra*, the statute does not require the plaintiff to marshal all his evidence and does not foreclose the defendant from later challenging the sufficiency or admissibility of the plaintiff's evidence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002; *CBM Eng'rs*, —S.W.3d—, 2013

---

[4] The requirement to show a "factual basis" is less onerous than that imposed on, for example, health care liability plaintiffs. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(b) (requiring affidavit establishing "factual basis" for each claim) *with id.* § 74.351(r)(6) (West 2012) (requiring plaintiff in a suit against a health care provider to serve an expert report "that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed").

[5] Both the 2009 and the 2005 versions of the statute employ the exact same phrase, requiring that the third-party professional's affidavit set forth "the factual basis for each claim." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(b); Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70, *amended by* Act of May 27, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1991–92.

WL 125713, at *6. Because the core focus of section 150.002(b) is ascertaining and verifying the existence of errors or omissions in the professional services provided, it does not "require that a certificate address operative facts other than the professional errors and omissions that are the focus of the statute." *See M-E Eng'rs*, 365 S.W.3d at 505–07. Nor does section 150.002(b) require that the "third-party" "licensed professional engineer" explain the law to the trial court. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(b).

In his affidavit, O'Connor stated the following: that based on applicable authority, sole-source specifications are not permitted for competitively bid public works projects; that DEI's paint specification was unlawful and, further, deficient because no objective requirements are provided; that Dunham violated a professional duty by drafting and soliciting bids using the restrictive paint specification; that Dunham and DEI knew about the open-competition requirement from correspondence on other projects; that DEI's stated basis for rejecting Sherwin-Williams' products (case studies from different products) was invalid; that the determination of an "equal" substitute must be made on whether the product achieves an acceptable minimum value not the highest value; that Dunham and DEI erred by conducting the procurement using an unlawful specification and advising the City it could do so; that this error prevented Sherwin-Williams from competing to supply paint; and that DEI and Dunham disparaged Sherwin-Williams and its products by reporting to the City that Sherwin-Williams' paints were not an acceptable substitute. Based on his review of DEI's Project plans and specifications and of various correspondence by the parties, O'Connor opined DEI's and Dunham's actions amounted to errors that violated their professional engineering duties. O'Connor provided factual assertions underlying that opinion—namely, DEI submitted specifications for the Project that provided for a

17

specific brand of paint products; did not provide objective, minimum-value criteria for what paint would be acceptable; rejected Sherwin-Williams' paint products based on case studies for different products; and reported to the City that Sherwin-Williams' products did not meet the Project specification.[6]  Although DEI takes particular issue with O'Connor's not providing any specific facts regarding the "falsity" of DEI's evaluation and recommendation, Sherwin-Williams' theory of falsity may be shown by the fact that DEI told the City Sherwin-Williams' paint products were not an acceptable substitute, which is contrary to Sherwin-Williams' contention that its products would have been considered "equal" under a properly submitted paint specification.

Thus, we conclude O'Connor's affidavit sets forth a sufficient "factual basis" for Sherwin-Williams' claims of intentional interference with prospective business relationships,[7] business disparagement,[8] and product disparagement[9]

_____

[6] We reject DEI's argument that O'Connor only provided legal conclusions in his affidavit.  The facts O'Connor provided in support of DEI's alleged professional errors are not conclusory because each is "clear, positive, free from inconsistencies, and could have been readily controverted."  *See CBM Eng'rs*, —S.W.3d—, 2013 WL 125713, at *6 (citing *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997)).

[7] "The elements of a claim for tortious interference with a prospective business relationship appear to be: (1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference."  *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

[8] In a business-disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff.  *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex.1987)).

[9] DEI specially excepted to Sherwin-Williams' product-disparagement claim as duplicative of SW's business-disparagement claim and as not being a viable Texas cause of action.  Whether such a claim is properly viable is not before us in this appeal.  Solely for

18

because it describes the facts giving rise to Sherwin-Williams' claims and thus provided the trial court a basis to conclude that Sherwin-Williams' claims are not frivolous. *See CBM Eng'rs*, —S.W.3d—, 2013 WL 125713, at \*5; *Benchmark*, 316 S.W.3d at 48. On this record, we cannot conclude the trial court abused its discretion in determining that O'Connor's affidavit meets the requirement of section 150.002(b) to "set forth specifically for each theory of recovery for which damages are sought, the . . . action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for such claim." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(b). Therefore, we overrule DEI's second issue.

Because Sherwin-Williams' certificate of merit sufficiently meets section 150.002's requirements, the trial court did not abuse its discretion in denying DEI's motion to dismiss, and we likewise overrule DEI's third issue.

## IV. CONCLUSION

Accordingly, we affirm the trial court's order denying DEI's motion to dismiss.

/s/     Tracy Christopher
         Justice

Panel consists of Justices Christopher, McCally, and Donovan.

---

purposes of our analysis, we merely presume, without deciding, that product disparagement is a viable claim. *See Forbes*, 124 S.W.3d at 171 n.3 (recognizing that United States Supreme Court has applied "actual malice" requirement to product-disparagement claim).

19