

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00233-CV

RCS ENTERPRISES, LP AND                                        APPELLANTS
JAMES MARTIN MONTGOMERY

V.

DARRELL G. HILTON AND DEBBIE                                     APPELLEES
L. HILTON

----------

## FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellants RCS Enterprises, LP (RCS) and James Martin Montgomery filed a motion to dismiss the lawsuit brought against them by Appellees Darrell G. Hilton and Debbie L. Hilton. The trial court denied that motion, and RCS and Montgomery now appeal. They alternately seek a writ of mandamus ordering the trial court to not consider the Hiltons' supplemental expert affidavit. Because we

---

[1]*See* Tex. R. App. P. 47.4.

hold that the Hiltons were not required to file a certificate of merit with their claim, we affirm the trial court's order and deny the mandamus petition.

## Background

On June 17, 2011, the Hiltons filed a petition to compel arbitration against Nationwide Housing Systems LP and Oak Creek Homes LP (collectively Oak Creek). The Hiltons alleged that they had entered into a purchase and sales agreement with Oak Creek for a modular home to be constructed by Oak Creek and that Oak Creek had, among other things, failed to remedy numerous construction defects in the home. The Hiltons demanded arbitration in accordance with the arbitration addendum to the sales contract.

Oak Creek filed a motion to designate Americo Housing, Inc. as a responsible third party. The Hiltons then amended their petition to add Americo, RCS, and Montgomery as defendants.[2] The Hiltons alleged that Oak Creek had contracted with Americo to assume Oak Creek's duties under the contract and that Oak Creek had contracted with RCS to prepare the engineered foundation plan for the home. The Hiltons alleged that RCS and Montgomery (RCS's president) had also acted as the third party inspection agency and third party inspector (TPI) for the home and that they had breached their duties that they owed to the Hiltons in that capacity.

---

[2]Oak Creek and Americo are not involved in this appeal.

2

The Hiltons' first amended petition did not include a certificate of merit. The Hiltons filed their second amended petition a week later, attaching the affidavit of engineer Tim Hogue.

Montgomery and RCS filed an original answer and a motion to dismiss based on civil practice and remedies code section 150.002.[3] The Hiltons filed a combined response and a motion for leave to file a supplemental affidavit. The trial court signed an order denying the motion to dismiss and granting leave to file a supporting affidavit. The Hiltons then filed a third amended petition along with Hogue's supporting affidavit. Montgomery and RCS now appeal the trial court's denial of their motion to dismiss and the court's granting of leave for the Hiltons to file a supporting affidavit.

## Standard of Review

We review a trial court's ruling on a motion to dismiss for an abuse of discretion.[4] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[5]

---

[3]Tex. Civ. Prac. & Rem. Code Ann. § 150.002 (West 2011).

[4]*Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Palladian Bldg. Co. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 433 (Tex. App.—Fort Worth 2005, no pet.).

[5]*Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

3

Statutory construction is a question of law, which we review de novo.[6] Once we determine the proper construction of a statute, we determine whether the trial court abused its discretion in the manner in which it applied the statute to the instant case.[7]

## Analysis

In their first issue, Montgomery and RCS argue that the trial court abused its discretion when it denied their motion to dismiss because dismissal was mandatory based on the Hiltons' failure to timely file a certificate of merit.

*Certificate of Merit Statute*

In suits "for damages arising out of the provision of professional services by a licensed or registered professional," the civil practice and remedies code requires the plaintiff to provide an affidavit—called a "certificate of merit"—made by a professional who holds the same professional license as the defendant.[8] For each theory of recovery on which the plaintiff is basing a claim for damages, the affidavit "shall set forth specifically . . . the negligence, if any, or other action, error, or omission of the . . . professional in providing the professional service."[9] With respect to a claim against an engineer, if the statute applies, the plaintiff

---

[6] *Palladian Bldg.*, 165 S.W.3d at 436.

[7] *Id.*

[8] Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a).

[9] *Id.* § 150.002(b).

4

must file with the trial court the affidavit of a third-party registered licensed professional engineer.[10]  If the plaintiff does not file the affidavit in compliance with the statute, the trial court must dismiss the claims against the defendant.[11]  RCS and Montgomery argued below and assert on appeal that the Hiltons' claims against them required the Hiltons to provide a certificate of merit and that the Hiltons failed to file a certificate by the statutory deadline.

*To What Professional Services Does Section 150.002 Apply?*

Courts have held that the specific acts on which the claim is based do not themselves have to constitute the provision of professional services in order for the statute to apply.  All that is required to make the statute applicable is that the claim *arose out of* the provision of professional services.[12]  If, in the course of providing a professional service to which the statute is applicable, the defendant committed some act that gave rise to the claim, the statute applies.[13]

In their brief, RCS and Montgomery stated that the Hiltons had to file a certificate of merit "because professional services were involved."  They argue that the statute does not explicitly state that the defendant must be providing *engineering* services for the statute to apply, but instead only requires that the

---

[10]*Id.* at § 150.002(a).

[11]*Id.* § 150.002(e).

[12]*See Dunham Eng'g, Inc. v. Sherwin-Williams Co.*, 404 S.W.3d 785, 793 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

[13]*See id.*

defendant be providing "professional services." "Thus," RCS and Montgomery argue, "it is the providing of 'professional services' by the defendant that is the focus of the . . . statute, not necessarily whether the defendant was engaged in the 'practice of engineering.'"

RCS and Montgomery then spend several pages of their brief discussing the definition of "professional services" in other contexts, including in the context of insurance policies covering the rendering of professional services[14] and in various Texas statutory codes.[15] RCS and Montgomery acknowledge that cases involving section 150.002 have looked at the definition of the practice of engineering in the occupations code, but they contend that those cases "were caught up in the debate about whether the [c]ertificate of [m]erit statute applied to claims other than for negligence, and thus are limited by that discussion."

We do not agree with RCS and Montgomery, however, that the occupations code does not provide us with guidance as to what constitutes the professional services to which the statute applies. We believe that to determine what constitutes professional engineering services, the legislature's decision about what constitutes the practice of engineering provides the best guide.

---

[14]*See Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260, 263 (Tex. App.—Texarkana 2001, no pet.); *Atlantic Lloyd's Ins. Co. v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 477 (Tex. App.—Dallas 1998, pet. denied).

[15]*See* Tex. Bus. Orgs. Code Ann. § 301.003(8) (West 2012); Tex. Health & Safety Code Ann. § 12.0121(a) (West 2010); Tex. Gov't Code Ann. § 2254.002(2)(A)–(B) (West 2008).

Referencing the occupations code ties the requirement of providing an affidavit of a person with the same professional license as the defendant to the purpose of the statute—to provide a basis for the trial court to determine whether the plaintiff's claim has any merit.[16]   A third-party engineer would have no better knowledge than the trial court about what was required for services that do not fall within the practice of engineering, and an affidavit from an engineer in that case would not help the trial court to determine whether the plaintiff's claim has any merit.

For that same reason, and construing the statute as a whole, section 150.002 does not apply generally to all claims of any kind against a defendant holding one of the professional licenses included within section 150.002.   If a defendant happens to be a licensed engineer and provided some sort of service to the plaintiff, but not a professional engineering service, then a claim that arises out of the defendant's performance of that service does not fall within the statute's application.[17]   For example, an engineer who has a side business of

---

[16] *See Morrison Seifert Murphy, Inc. v. Zion*, 384 S.W.3d 421, 425 (Tex. App.—Dallas 2012, no pet.) ("[T]he purpose of the certificate of merit is to provide a basis for the trial court to conclude that the plaintiff's claims have merit.") (quoting *Criterium–Farrell Eng'rs v. Owens*, 248 S.W.3d 395, 399 (Tex. App.—Beaumont 2008, no pet.).

[17] *See, e.g.*, *Carter & Burgess, Inc. v. Sardari*, 355 S.W.3d 804, 809 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (deferring to the legislature's definition of the practice of architecture in the occupations code "to define the scope of professional services provided by an architectural firm for purposes of determining whether a certificate of merit is required"); *TDIndustries, Inc. v. Rivera*, 339 S.W.3d 749, 755–56 (Tex. App.—Houston [1st Dist.] 2011, no pet.)

mowing lawns could be sued for an act done in the course of providing those lawn care services, and no certificate of merit would need to be provided. In this case, if the Hiltons' claim against RCS and Montgomery did not arise out of RCS and Montgomery's provision of engineering services, then the statute does not apply. But if RCS and Montgomery acted as a TPI in the course of providing professional engineering services, the statute does apply, even if acting as a TPI would not, in and of itself, constitute the practice of engineering. We therefore determine whether work as a TPI constitutes the practice of engineering, and, if not, whether it was in this case done as part of the provision of engineering services.

*Do the Services Allegedly Provided Fall Within Section 150.002?*

RCS and Montgomery argue that their alleged activities fall within application of section 150.002. In their live pleadings at the time that the trial court overruled the motion to dismiss and RCS and Montgomery filed their notice of appeal, the Hiltons alleged that RCS was a TPI agency, that Montgomery was a TPI employed by RCS, and that RCS and Montgomery owed duties to the Hiltons by virtue of Montgomery's role as the TPI. They alleged that RCS and Montgomery assumed duties under rules promulgated by the Texas Department

---

(holding that claims against an engineering firm did not require a certificate of merit because they did not implicate an engineer's specialized knowledge or judgment).

8

of Licensing and Regulation (TDLR), which regulates the construction and installation of modular homes like the one purchased by the Hiltons.

The Hiltons asserted that at the times relevant to this case, the TDLR rules required inspections of modular homes constructed outside of a municipality to be made by a TPI. The rules required the TPI (1) to inspect the foundation construction and verify if the foundation was being constructed in accordance with the foundation plans for the home and (2) to post a deviation notice if the TPI discovered that construction did not conform to the plans. The rules further required the TPI to file original reports for its inspections with the TDLR. The Hiltons alleged that RCS and Montgomery breached their duties in that they failed to inspect, verify, and report that the construction did not conform to the plans. They further allegedly breached their duties by failing to post any deviation notice, failing to make any TPI site inspection report, and failing to file any written report with the TDLR for any site inspection of the foundation.

The Hiltons also alleged that Montgomery made false representations to Americo about an alternative plan for the foundation's footings that it could use while still satisfying the foundation plan's requirements. They alleged that RCS's and Montgomery's conduct constituted fraud and fraudulent concealment or alternatively negligence or gross negligence.

In their response to the motion to dismiss, the Hiltons asserted that they alleged claims against Montgomery for acts done in his capacity as a TPI in February 2009, and against RCS for vicarious liability for Montgomery's acts.

9

They again asserted that TDLR rules do not require a TPI to be a licensed engineer or require any education, training, or experience in engineering sciences. They contended that "due to concerns of limitations defenses," they "promptly joined [RCS and Montgomery] . . . shortly after discovering their being the TPI. Though [the Hiltons] believed no certificate of merit was necessary, out of precaution [they] obtained the supporting affidavit of Tim Hogue, P.E." and attached it to the second amended petition.

No party disputed in the pleadings and motions filed in the trial court that RCS was retained to provide a foundation plan for the Hiltons' home, that Montgomery created the foundation plan on behalf of RCS, or that the act of creating an engineered foundation plan falls within the practice of engineering. The parties do dispute, however, whether Montgomery's work as the TPI for the Hiltons' home was done in the context of providing a professional engineering service.

The Hiltons are correct that under Texas regulations, a TPI does not need to be an engineer. In fact, a TPI does not need a college degree of any kind.[18] A TPI agency must be managed by a licensed professional, but that professional may be either an engineer or an architect.[19] Yet the TPI, who need not have an

---

[18] *See* 16 Tex. Admin. Code § 70.23(c)(3); c*f.* Tex. Occ. Code Ann. § 1001.302 (West 2012) (requiring an applicant for an engineering license to have graduated from an approved engineering curriculum or approved related science curriculum at an institution of higher learning).

[19] 16 Tex. Admin. Code § 70.23(c).

10

engineering degree and does not need to be supervised by an engineer and can work for an agency that is not managed by an engineer, is responsible for inspecting the structure to determine if it meets the engineered foundation plans.[20]

Occupations code section 1001.003(c) includes a list of activities that are included within the practice of engineering.[21] Professional engineering services are being provided when they implicate a professional engineer's education, training, and experience in applying special knowledge or judgment.[22] Specifically, the statute provides:

> (b) In this chapter, "practice of engineering" means the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which *requires engineering education, training, and experience* in applying *special knowledge or judgment* of the mathematical, physical, or engineering sciences to that service or creative work.
>
> (c) The practice of engineering includes:
>
> . . . .
>
>> (9) engineering for review of the construction or installation of engineered works to monitor compliance with drawings or specifications;
>
> . . . . [or]

---

[20]16 Tex. Admin. Code § 70.73.

[21]Tex. Occ. Code Ann. § 1001.003(c) (West 2012).

[22]*See Bruington Eng'g Ltd. v. Pedernal Energy L.L.C.*, 403 S.W.3d 523, 529 (Tex. App.—San Antonio 2013, no pet.); *Rivera*, 339 S.W.3d at 754.

11

        (12) any other professional service necessary for the planning, progress, or completion of an engineering service.[23]

RCS and Montgomery argue that their actions fit within the types of activities included in subsection (c)(9) and (c)(12). Specifically, they argue that the Hiltons' allegations that Montgomery failed to report whether construction of the foundation complied with the foundation plans fits within the "monitor compliance with drawings or specifications" language in (c)(9). But RCS and Montgomery ignore the rest of (c)(9), which begins with the word "engineering": "*engineering* for review of the construction or installation of engineered works to monitor compliance with drawings or specifications."[24] We have already stated that a TPI, who need not be an engineer or supervised by an engineer, inspects foundations for compliance with foundation plans. If inspecting a foundation to see if it complies with a foundation plan necessarily implicated an engineer's training, education, and experience, TPI regulations would require TPIs to be engineers. They do not. Thus, merely inspecting a foundation does not involve an engineer's specialized education, training, and experience, and is therefore not the practice of engineering. To constitute engineering, it must involve the use of an engineer's education, training, and experience in applying special knowledge or judgment.

---

[23]Tex. Occ. Code Ann. § 1001.003(b), (c) (emphasis added).

[24]*Id.* § 1001.003(c)(9) (emphasis added).

12

RCS and Montgomery also argue that the acts alleged by the Hiltons fall within (c)(12) because they involve the provision of professional services. But what kind of professional services? Subsection (c)(12) includes within the practice of engineering any professional service necessary for the completion of an *engineering* service.[25] Thus, the application of (c)(12) presupposes the provision an engineering service—a service that implicates an engineer's education, training, or experience. The application of (c)(12) is not limited to those activities that need an engineer to perform them, but to be included, an activity has to be one that is necessary for the planning, progress, or completion of a service that involves the practice of engineering—in other words, one for which an engineer is required. If there is no engineering service being provided, then (c)(12) does not apply.

Given that work as TPI does not require any of the specialized knowledge of an engineer, the acts alleged by the Hiltons do not fall within the practice of engineering because they do not implicate an engineer's specialized education, training, and experience. And there was no allegation that Montgomery acted as the TPI as part of the provision of engineering services. Inspection of a foundation can be done as part of the provision of an engineering service, in which case the act would fall within the practice of engineering. But the Hiltons did not allege that RCS acting as the TPI was done in the course of RCS

---

[25]*Id.* § 1001.003(c)(12).

providing engineering services. The only allegations on the matter were that after the home was constructed, Oak Creek caused RCS to act as the TPI. The petition does not contain allegations of facts related to the performance of services by RCS and Montgomery that implicate an engineer's education, training, and experience in applying special knowledge or judgment. From this record, we cannot conclude that the trial court abused its discretion by concluding that Montgomery did not inspect the foundation while performing professional engineering services.

This case is distinguishable from *Capital One v. Carter & Burgess, Inc.*[26] In that case, the defendant firm was hired to provide professional engineering services, and the claims were based on the plaintiff's reliance on allegedly false representations made *as part of* the defendant's performance of the professional engineering services for which the firm had been hired.[27] The claim therefore arose from that firm's provision of professional engineering services.[28]

This case is also distinguishable from *TDIndustries, Inc. v. Citicorp North America, Inc.*[29] In that case, we determined that the acts by TDI alleged in the

[26]344 S.W.3d 477, 480 (Tex. App.—Fort Worth 2011, no pet.).

[27]*Id.* at 481.

[28]*Id.*

[29]378 S.W.3d 1 (Tex. App.—Fort Worth 2011, no pet.).

14

petition fit within the definition of the practice of engineering.[30] We also stated (as we do in this case) that "a claim for damages asserted against a professional engineer arises out of the provision of professional services (and thus requires a certificate of merit) if the claim implicates the engineer's education, training, and experience in applying special knowledge or judgment" and that "if a plaintiff's claim for damages does not implicate the special knowledge and training of the subject professional, it cannot be a claim for damages arising out of the provision of professional services."[31] And in that case, the plaintiff alleged that TDI had installed complex machinery and equipment and then failed to properly test it.[32] We held that the "negligence claim implicated TDI's engineering education, training, and experience because it was premised on TDI's knowledge of the installation and testing of complex machinery and equipment."[33] Here, the claims alleged do not implicate Montgomery's engineering education, training, or experience.

This case is more like *Rivera*.[34] In that case, an engineering firm was hired to provide management services for the convention center at which the plaintiff

---

[30]*Id.* at 6.

[31]*Id.* at 5.

[32]*Id.* at 2.

[33]*Id.* at 6.

[34]339 S.W.3d at 749.

15

was injured.[35]  The plaintiff was injured by a freight elevator operated by one of the firm's employees, who did not hold an engineering license.  The fact that the defendant was an engineering firm and was providing services of some kind was not dispositive.  The court of appeals concluded that the claims alleged did not implicate an engineer's specialized knowledge or judgment so as to arise out of the provision of professional engineering services.[36]

Likewise, we conclude that the fact that Montgomery is an engineer and was hired to provide a service is not dispositive to the issue.  Montgomery was not hired to provide an engineering service out of which the claims against him and RCS arose.  Accordingly, the Hiltons did not need to provide a certificate of merit.  We overrule RCS and Montgomery's first issue.  We therefore need not reach their second issue challenging the adequacy of the certificate of merit.

## Conclusion

Having overruled RCS and Montgomery's first issue, which is dispositive, we affirm the trial court's order denying the motion to dismiss.

---

[35]*Id.* at 751.

[36]*Id.* at 755–56.

16

LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  December 19, 2013