MORRISON SEIFERT MURPHY, INC., Appellant

v.

Buck ZION, Appellee.

No. 05–11–01093–CV.

Court of Appeals of Texas, Dallas.

Aug. 28, 2012.

Rehearing Overruled Nov. 13, 2012.

Gino John Rossini, Dwayne J. Hermes, Deke D. Owen, Hermes Sargent Bates, LLP, Dallas, TX, for Appellant.

Brian A. Eberstein, Shelly Greco, Eberstein & Witherite, LLP, George Newton Wilson III, Thompson, Coe, Cousins & Irons, LLP, Dallas, TX, Rosalyn Renee Tippett, Tippett Law Office, Coppell, TX, for Appellee.

Before Justices BRIDGES, LANG, and FILLMORE.

## OPINION

Opinion By Justice LANG.

In this interlocutory appeal, Morrison Seifert Murphy (MSM) appeals the trial court's denial of its motion to dismiss Buck Zion's negligence claims respecting MSM's architectural interior design services. In five issues, MSM argues the trial court erred in denying MSM's motion. All issues on appeal assert an expert affidavit filed by Zion that supported his claim of MSM's negligence, a "Certificate of Merit," did not meet the substantive requirements of chapter 150 of the Texas civil practice and remedies code. We decide MSM's issues against it and affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Zion alleged he was injured on March 19, 2009, after walking into a "clear, unmarked, unetched and unprotected glass wall." He sued the owners of the building in which the wall was located for these injuries. Zion subsequently amended his petition to add as a defendant MSM, a professional interior design architectural firm. Zion alleged MSM was negligent in designing the glass wall.

In an action for damages involving professional services provided by a licensed professional, § 150.002 of the Texas civil practice and remedies code requires the plaintiff file a "certificate of merit," an expert report, demonstrating the plaintiff's claims have merit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002 (West 2011). Accordingly, when Zion amended his petition to add MSM as a defendant, he also filed the required certificate of merit, which was an affidavit authored by James R. Drebelbis, an architect. The affidavit set forth Drebelbis's qualifications and made statements as to MSM's alleged negligence.

MSM filed a motion to dismiss Zion's claims, arguing Drebelbis's affidavit did not meet the requirements of § 150.002. Zion responded that the affidavit met the statutory requirements, but also requested an extension in order to file a supplemental affidavit of Drebelbis that "clarified" his qualifications to render opinions as to MSM's architectural services. The trial court denied MSM's motion to dismiss, but made no ruling as to Zion's request for an extension. This interlocutory appeal followed.

## II. SUFFICIENCY OF AFFIDAVITS

In five issues, MSM argues the trial court erred in denying MSM's motion to dismiss. In its first issue, MSM argues Drebelbis's affidavit did not comply with chapter 150 because it failed to demonstrate that Drebelbis was qualified in the area of MSM's practice, architectural interior design. Second, MSM argues Drebelbis's affidavit did not comply with chapter 150 because it does not allege a negligent action, error, or omission. Third, MSM argues Drebelbis's affidavit did not comply with chapter 150 because it does not allege a factual basis for Zion's claims against MSM. Fourth, MSM argues the trial court erred by considering Drebelbis's supplemental affidavit in determining the merits of Zion's claims. Fifth, MSM argues the trial court erred in not dismissing Zion's claims with prejudice because, even if the supplemental affidavit cured the prior affidavit's deficiencies, the supplemental affidavit was filed too late and the claims contained therein are barred by the statute of limitations.

### A. Standard of Review and Applicable Law

■ An order denying a motion to dismiss under chapter 150 is appealable as an interlocutory order. TEX. CIV. PRAC. &

REM. CODE ANN. § 150.002(f). "We review such orders under an abuse of discretion standard." *TD Industries, Inc. v. Rivera*, 339 S.W.3d 749, 752 (Tex.App.-Houston [1st Dist.] 2011, no pet.); *see also Belvedere Condos. at State Thomas, Inc. v. Meeks Design Grp., Inc.*, 329 S.W.3d 219, 220 (Tex.App.-Dallas 2010, no pet.). An abuse of discretion occurs when the trial court acts in an unreasonable and arbitrary manner or without reference to any guiding rules or principles. *Belvedere Condos. at State Thomas, Inc.*, 329 S.W.3d at 220.

■ Section 150.002 provides, in relevant part:

§ 150.002. Certificate of Merit

(a) in any action ... for damages arising out of the provision of professional services by a licensed ... professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect who: (1) is competent to testify; (2) holds the same professional license ... as the defendant; and (3) is knowledgeable in the area of practice of the defendant and offers testimony based on the person's:

  (A) knowledge;

  (B) skill;

  (C) experience;

  (D) education;

  (E) training; and

  (F) practice.

(b) The affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, ... error, or omission of the licensed ... professional in providing the professional service.... The third-party licensed architect ... shall be licensed ... in this state and actively engaged in the practice of architecture....

   ....

(e) The plaintiff's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant. This dismissal may be with prejudice.

. . . .

(g) This statute shall not be construed to extend any applicable period of limitation. . . .

TEX. CIV. PRAC. & REM. CODE ANN. § 150.002. "[T]he purpose of the certificate of merit is to provide a basis for the trial court to conclude that the plaintiff's claims have merit." *Criterium–Farrell Eng'rs v. Owens,* 248 S.W.3d 395, 399 (Tex.App.-Beaumont 2008, no pet.).

▆▆▆ "[I]f resolution of the issue requires us to construe statutory language, we review statutory construction de novo." *Ustanik v. Nortex Found. Designs, Inc.,* 320 S.W.3d 409, 412 (Tex.App.-Waco 2010, pet. denied); *see also Belvedere Condos. at State Thomas, Inc.,* 329 S.W.3d at 220. The method of our analysis is as follows:

> The meaning of a statute is a legal question, which we review de novo to ascertain and give effect to the Legislature's intent. Where text is clear, text is determinative of that intent. "[W]hen possible, we discern [legislative intent] from the plain meaning of the words chosen." This general rule applies unless enforcing the plain language of the statute as written would produce absurd results. Therefore, our practice when construing a statute is to recognize that "the words [the Legislature] chooses should be the surest guide to legislative intent." Only when those words are ambiguous do we resort to rules of construction or extrinsic aids.

*Entergy Gulf States, Inc. v. Summers,* 282 S.W.3d 433, 437 (Tex.2009) (citations omitted). Once we determine the proper construction of the statute, we determine whether the trial court abused its discretion in the manner in which it applied the statute to the instant case. *Palladian Bldg. Co. v. Nortex Found. Designs, Inc.,* 165 S.W.3d 430, 436 (Tex.App.-Fort Worth 2005, no pet.).

## B. Application of Law to Facts

### 1. *Drebelbis's Qualifications*

In its first issue, MSM argues Drebelbis's affidavit did not comply with chapter 150 because it failed to demonstrate that Drebelbis was qualified in the area of MSM's practice, architectural interior design. MSM contends chapter 150 "calls on courts to distinguish between the practice of architecture generally and the practice of architectural interior design" due to chapter 150's incorporation of the Texas Occupations Code. Zion disagrees, responding that Drebelbis's affidavit stated he was qualified in the practice of architecture. In his original affidavit, Drebelbis stated "[b]y virtue of [his] knowledge, skill, education, training, and professional experience and practice," he had personal knowledge of the standards "for the practice of architectural services in the State of Texas and specifically of the *same area of practice as MSM.*" (Emphasis added). Zion contends that § 150.002(a) requires only that he be knowledgeable in the "area" of practice of the defendant, that is "architecture," and not necessarily that of a "specialized area of law" or "sub-specialty," such as architectural interior design.

In support of its position, MSM cites *Landreth v. Las Brisas Council of Co–Owners, Inc.* for the proposition that the affiant must practice in the same subspeciality as the defendant. 285 S.W.3d 492, 496 (Tex.App.-Corpus Christi 2009, no pet.). We disagree that *Landreth* reaches that conclusion. In *Landreth,* affiant Drebelbis (the same Drebelbis involved in this case) stated he practiced forensic architecture whereas, the record showed, the de-

fendant practiced design restoration architecture. *Id.* at 495. The *Landreth* court concluded the trial court abused its discretion in denying the defendant's motion to dismiss because Drebelbis's initial affidavit did not state he was "practicing in the same area of practice" as the defendant, which language was required by the statute. *Id.* at 500 ("The statute's plain language does not allow much latitude."). *Landreth* contained no conclusion as to whether the affiant is required to practice in the same sub-specialty as the defendant under chapter 150.

Moreover, *Landreth* is not applicable because it interpreted a now-superseded statute. The version of § 150.002(a) that was before the court of appeals in *Landreth* required the affiant to "*practic[e]* in the same area as the defendant." *Id.* at 496 (emphasis added) (quoting Act of May 15, 2005, 79th Leg., R.S., ch. 209, 2005 Tex. Gen. Laws 369, 370 (amended 2009) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 150.002 (West 2011))). In 2009, the Legislature "broadened the scope of chapter 150 by ... (b) reducing the affiant's qualification requirement from 'practicing in the same area' as the defendant to 'knowledgeable' in the same area as the defendant." *Benchmark Eng'g Corp.*, 316 S.W.3d at 45 n. 2.

MSM also cites two Texas Supreme Court opinions, *Broders v. Heise*, 924 S.W.2d 148, 150 (Tex.1996), and *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 717 (Tex.1998), as being analogous to the issue presented here and for the proposition that an affiant must demonstrate his "knowledge, training, and experience" in the relevant sub-specialty as opposed to mere general qualifications. *Broders* addresses the qualifications of an expert in a healthcare negligence case. 924 S.W.2d at 151–54 ("Our holding does not mean that only a neurosurgeon can testify about the

cause in fact of death from an injury to the brain, or even that an emergency room physician could never so testify. What is required is that the offering party establish that the expert has 'knowledge, skill, experience, training, or education' regarding the specific issue before the court which would qualify the expert to given an opinion on that particular subject."). *Gammill* dealt with a products liability case and the qualifications of an expert. 972 S.W.2d at 718–20.

To support his contention the affidavit is sufficient, Zion cites a memorandum opinion from the Austin Court of Appeals, *Elness Swenson Graham Architects, Inc. v. RLJ II–C Austin Air, LP*, No. 03–10–00805–CV, 2011 WL 1562891, at *2 (Tex. App.-Austin Apr. 20, 2011, pet. denied). In *Elness*, the defendant challenged the affiant's qualifications, in part, by arguing the affiant failed to establish "he is knowledgeable in the area of practice of [the defendant]." Citing *Natex v. Paris Independent School District*, 326 S.W.3d 728, 735 n. 5 (Tex.App.-Texarkana 2010, pet. filed), the Austin Court of Appeals stated: "[Section 150.002] does not require the affiant to *state* that he is knowledgeable in the same area of practice of the defendant, but rather that he *be* knowledgeable in that area." *Elness Swenson Graham Architects, Inc.*, 2011 WL 1562891, at *2 (stating "such specific and precise language is not required when it is evident from the affidavit that the requirement [that affiant is knowledgeable in the same area of practice as the defendant] has been met").

We cannot agree with MSM's contention we must evaluate certificates of merit on the basis of sub-specialties because § 150.001 of the Texas Civil Practice and Remedies Code assigns to "practice of architecture" the meaning given it by § 1051.001 of the Occupations Code, TEX.

CIV. PRAC. & REM. CODE ANN. § 150.001(2) (citing TEX. OCC. CODE ANN. § 1051.001(1) (West 2012)) (" 'Architect' means a person registered under this chapter to engage in the practice of architecture."). The plain language of § 150.002 does not state the incorporation of the Occupations Code requires the opining professional to demonstrate expertise in the defendant's sub-specialty. *See Benchmark Eng'g Corp. v. Sam Houston Race Park,* 316 S.W.3d 41, 49 (Tex.App.-Houston [14th Dist.] 2010, pet. withdrawn) (rejecting the defendant's argument that § 150.002(a) requires the affidavit to state the affiant practices in same sub-specialty as the defendant).

■■■ Although the case law cited by MSM, *Landreth,* 285 S.W.3d at 497–500, *Broders,* 924 S.W.2d at 151–54, and *Gammill,* 972 S.W.2d at 718–20, addresses expert witness qualifications, the cases do not direct that we require that Drebelbis's affidavit demonstrate practice in the same sub-specialty as MSM. The plain language of § 150.002(a), which we are bound to apply, specifically states only that the professional opining in the certificate of merit must be "knowledgeable in the area of practice of the defendant." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a). We cannot stray from the plain language of the statute. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex.1999) ("[W]hen we stray from the plain language of a statute, we risk encroaching on the Legislature's function to decide what the law should be."). Drebelbis's affidavit states: "By virtue of my knowledge, skill, education, training, and professional experience and practice, I therefore have personal knowledge of the general acceptable standards for the practice of architectural services in the State of Texas and specifically of the same area of practice as MSM." We conclude Drebelbis's statement that he is knowledgeable in

the area of practice of MSM is sufficient to meet the requirements of § 150.002. *See Elness,* 2011 WL 1562891, at *2. Accordingly, we decide MSM's first issue against it.

### 2. Assertion of Negligence

■■■ In its second issue, MSM argues Drebelbis's affidavit did not comply with chapter 150 because it does not allege a negligent action, error, or omission. MSM argues Drebelbis states only that MSM violated its professional code of conduct and that code does not create a standard of care for civil actions.

Chapter 150 requires the affidavit "set forth specifically ... the negligence, if any, or other action, error, or omission of the licensed ... professional in providing the professional service." TEX. CIV. PRAC. & REM. CODE. ANN. § 150.002(b). However, we find two reported Texas opinions that address the issue of whether chapter 150 requires the affiant to state the standard of care. Those courts disagree. In *Benchmark Engineering Corp. v. Sam Houston Race Park,* the 14th Court of Appeals concluded the legislature's failure to incorporate a standard-of-care requirement for certificates of merit means no such statement must be included in an affidavit. 316 S.W.3d at 45–46. However, the Beaumont Court of Appeals has concluded the opposite: "the certificate of merit must necessarily address the applicable standard of care and the defendant's failure to meet the standard." *Criterium–Farrell Eng'rs,* 248 S.W.3d at 400.

■■■ To discern the legislature's intent, we begin with the statute's words. *TGS–NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 439 (Tex.2011). We consider statutes as a whole, rather than by their isolated provisions. *Id.* "We presume that the Legislature chooses a statute's language with care, including each

word chosen for a purpose, while purposefully omitting words not chosen." *Id.* In his initial affidavit, Drebelbis stated "It is my opinion that these errors and/or omissions show that MSM was negligent...." The language of chapter 150 contains no requirement that certificates of merit include recitation of a standard of care. *See Benchmark Eng'g Corp.*, 316 S.W.3d at 46. We decide MSM's second issue against it.

### 3. Affidavit's Factual Basis

█ In its third issue, MSM argues Drebelbis's affidavit did not comply with chapter 150 because it does not allege a factual basis for Zion's claim and that Drebelbis lacked direct knowledge of the contract, drawings, or specifications governing MSM's work. Specifically, MSM contends Drebelbis's affidavit "offers only conclusory opinions that lack any basis in fact" and "Drebelbis lacked direct knowledge of the contract governing MSM's work ..., any of MSM's drawings or specifications ..., or any other actual knowledge of MSM's work...." MSM cites case law that states conclusory statements are improper in motion for summary judgment practice and contends we should apply those rules as to § 150.002(a). Also, MSM contends conclusory statements in certificates of merit do not comport with the purpose of those certificates to "provide a basis for the trial court to calculate that the plaintiff's claims have merit." *Criterium–Farrell Eng'rs*, 248 S.W.3d at 399.

Chapter 150 requires the affidavit "set forth specifically for each theory of recovery ... the factual basis for each such claim." Tex. Civ. Prac. & Rem. Code. Ann. § 150.002(b). The *Benchmark Engineering* case provides some guidance. 316 S.W.3d at 47–48. After noting the legislature did not define "factual basis," the 14th Court of Appeals construed § 150.002(b), concluding "the plain meaning of the statute requires an affiant to describe the facts

giving rise to the claim." *Id.* at 48; *see also Nangia v. Taylor*, 338 S.W.3d 768, 772–73 (Tex.App.-Beaumont 2011, no pet.).

Drebelbis's initial affidavit stated, in part:

I have generally reviewed the project related documents produced by MSM....

Based on my review of the ... documents, I understand that MSM provided Architectural Services ... for design of ... a multi-story condominium....

The ground floor of the level of the multistory condominium has a commercial Lobby access by the general public from the southwest side.

The Entrance consists of two wood doors that slide to open. On either side of the wood doors are two glass sidelights that are continuous from the floor plane to the horizontal metal band located at the top of the sliding wood door. This construction gives the floor the appearance of being continuous without interruption through the sidelight. When the doors are open they almost cover the nearest sidelight. The second sidelight is separated from the first by a vertical metal jamb. From the interior, during the day, the brighter exterior lighting negates any reflection that might be cast by the interior surface of the glazing. Visually, the glass door does not appear as a barrier, but rather appears to be an opening to the exterior.

On March 19, 2009, Mr. Buck Zion entered the Lobby to ask directions from the concierge stationed at the desk next to the northeast side of the entrance. After receiving directions, Mr. Zion turned to his left, walked to the exterior, and ran into the northeast pane of glass, sustaining injury

due to the impact. According to sworn testimony taken of Mr. Jones and Mr. Dixon, five other persons in addition to Mr. Zion similarly mistook the sidelight for a passage to the exterior and impacted the glass while attempting to exit the Lobby.

It is my professional opinion that MSM is responsible for at least—but not limited to—the design of a glazed panel in the [building] located in the area used as a means of egress from the Lobby that can be, and has on several occasions been, mistaken for an exist from the Lobby. This design constitutes an act, error, or omission that has a history of causing harm to the Public.... It is my opinion that these errors and/or omissions show that MSM was negligent in failing to meet the applicable work product standards of design professionals in the design of the [building] to safely accommodate the use for which the building was intended.

We conclude Drebelbis's affidavit includes a sufficient factual basis to meet the requirements of chapter 150. *See Benchmark Eng'g Corp.*, 316 S.W.3d at 48. Accordingly, we decide MSM's third issue against it.

*4. Consideration of Supplemental Affidavit*

In its fourth issue, MSM argues the trial court erred by considering Drebelbis's supplemental affidavit and "implicitly overruling" MSM's objection to such consideration. In its fifth issue, MSM argues the trial court erred in not dismissing Zion's claims with prejudice because, even if the supplemental affidavit cured the prior affidavit's deficiencies, the supplemental affidavit was filed too late and the claims contained therein are barred by the statute of limitations.

Zion filed a response to MSM's motion to dismiss. In that response, Zion contended the certificate of merit from Drebelbis met the statutory requirements. However, "in the unlikely event this Court finds [Zion]'s Certificate of Merit to be deficient," Zion alternatively sought an "extension" to file a supplement to Drebelbis's affidavit. At the conclusion of the hearing on the motion to dismiss, the trial court stated on the record: "The motion to dismiss is denied. The Court makes no ruling at this time on the request for extension." Because the trial court did not rule on Zion's request, we cannot say the trial court considered the supplemental affidavit. In light of our conclusions as to the initial affidavit above, we need not address issues 4 and 5.

### III. CONCLUSION

We cannot conclude the trial court abused its discretion when it denied MSM's motion to dismiss. We decide MSM's five issues against it and affirm the trial court's judgment.