JACOBS ENGINEERING GROUP, INC. and Jacobs Engineering, Inc., Appellants

v.

Michelle I. ELSEY, Individually and as Wrongful Death Beneficiary of Timothy D. Elsey, Deceased and as Executrix of the Estate of Timothy D. Elsey, Deceased; Danielle Elsey, Charlotte Elsey and Timothy D. Elsey, Appellees

NO. 14-16-00045-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed September 8, 2016

David Arthur Oliver Jr., Paul Kerlin, Houston, TX, for Appellants

Raudel Canche, Bradley Landon Leger, Kassi Dee Patrick Marks, The Woodlands, TX, for Appellees

Panel consists of Justices Busby, Donovan, and Wise.

## OPINION

Ken Wise, Justice

In this interlocutory appeal, two engineering companies challenge the trial court's denial of their motion to dismiss the plaintiffs' wrongful death claims for failure to file a certificate of merit as required by section 150.002 of the Texas Civil Practices and Remedies Code. The companies contend that the trial court abused its discretion because the plaintiffs' claims that the companies were grossly negligent for failing provide a safe workplace for the deceased, an engineer employed by the companies, were claims arising out of the provision of professional engineering services and therefore the plaintiffs were required to provide the certificate of merit. Because we conclude that section 150.002 does not apply to the gross negligence claims alleged by the plaintiffs, we affirm.

### Factual and Procedural Background

In May 2015, plaintiffs Michelle Elsey, individually and as wrongful death beneficiary of Timothy D. Elsey, deceased, and as executrix of the estate of Timothy D. Elsey, deceased, Danielle Elsey, Charlotte Elsey, and Timothy D. Elsey, as wrongful death beneficiaries of Timothy D. Elsey, deceased ("the plaintiffs"), sued Jacobs Engineering Group, Inc. and Jacobs Engineering, Inc. (collectively, "Jacobs Engineering"),[1] as well as numerous Lockheed Martin entities not parties to this appeal, in a Galveston County district court.

The plaintiffs alleged that Timothy D. Elsey worked as an engineer for thirty years throughout the Unites States before his death in 2013. The majority of the time, Elsey worked in Texas for Jacobs Engineering and Lockheed Martin. From 1999 until he died, Elsey worked as a sound engineer who "designed and built structures at the NASA facility in Clear Lake, Texas."

According to the plaintiffs, Elsey built various structures and materials to be tested in the acoustics lab, which would ultimately be utilized by the Space Center for various missions and projects. In particular, Elsey used medium density fiberboard ("MDF") and plywood to build at least two structures called "Anechoic chambers," which were described as "soundproof structures where testing was performed to determine the suitability of materials used in space to withstand sound waves, in particular sound waves with very high decibels." All of the cutting, sanding, and construction was performed by Elsey "at the direction of the Defendants." The plaintiffs alleged that, in constructing these struc-

---

1. In the trial court, appellants asserted that the sole defendant was Jacobs Engineering Group Inc., "improperly named as 'Jacobs Engineering Group, Inc.' and 'Jacobs Engineering, Inc.'" The judgment names only "Ja- cobs Engineering Group Inc." On appeal, however, the appellants identify themselves by the names assigned by the plaintiffs and refer to two companies.

tures, Elsey was not provided with the appropriate personal protective equipment to be working with MDF, plywood, various wood products, and other items containing carcinogenic compounds "such as urea formaldehyde, phenol formaldehyde, wood dust, PAHs, PCPs, TCDDs, and other carcinogenic-containing compounds."

The plaintiffs further alleged that at the direction of the defendants, Elsey also built other types of structures with plywood and MDF, and that he "worked with these compounds and products every day at his employment with the Defendants and would come home daily covered in fine powdery dust which, unbeknownst to him and his family, contained carcinogenic compounds which ultimately lead to his cancer diagnosis and death." According to the plaintiffs, Elsey "cut, sanded, and worked under a hood without adequate ventilation, was not provided any type of personal protective equipment, nor was [he] provided with any type of respiration devices or a face mask to prevent the inhalation of these carcinogenic compounds." The defendants did provide multiple shirts and uniforms for Elsey to change into because, the plaintiffs alleged, they were aware that Elsey would be covered in the fine particles.

The plaintiffs also alleged that in 2012, Elsey was diagnosed with stage four large B-cell leukemia and underwent cancer treatment, but he succumbed to the disease on May 11, 2013. The plaintiffs alleged that Elsey's healthcare providers believe, within a reasonable degree of medial probability, that Elsey's cancer was the direct result of his daily exposure to these carcinogens while in the defendants' workplace. The plaintiffs also claimed that there is no other source of exposure.

Jacobs Engineering answered with a general denial, subject to a motion to transfer venue. In August 2015, Jacobs Engineering filed a motion to dismiss all claims brought by the plaintiffs, subject to its motion to transfer venue. In the motion, Jacobs Engineering asserted that it was a corporation that employs licensed professional engineers who provide engineering services to a variety of clients; it was engaged by NASA to provide engineering services at its Clear Lake, Texas, facility; and Elsey was employed as an engineer to work on a NASA project.[2] Jacobs Engineering observed that Chapter 150 of the Texas Civil Practice and Remedies Code provides that in "actions for damages arising out of professional services provided by a licensed or registered professional," a plaintiff is required to file a certificate of merit along with its complaint. Because the plaintiffs had not done so, Jacobs Engineering asserted that their claims must be dismissed.

The plaintiffs responded, arguing that no certificate of merit was required because their case did not involve alleged errors or omissions in professional services rendered; rather, the case involved the duties an employer owes to its employees. Both parties filed additional briefing in support of their positions.

On January 6, 2016, the trial court signed an order denying Jacobs Engineering's motion to dismiss. The trial court found that "Chapter 150 is not applicable to this case and no Certificate of Merit is required because this case involves an employee who alleges injuries and death based on an unsafe workplace, the claims do not involve the provision of engineering services, and the case does not involve

**2.** Although Jacobs Engineering's motion's reflects that an affidavit was contemplated to support the statements made in the motion, ultimately no affidavit or other evidence was provided.

allegations by clients or customers" of Jacobs Engineering. This interlocutory appeal followed.[3]

## ANALYSIS

In one issue, Jacobs Engineering—the decedent's employer and professional engineering firm—contends that the trial court erred by failing to dismiss the plaintiffs' gross negligence claims against it because the plaintiffs never filed a certificate of merit identifying any negligent act, error, or omission committed by Jacobs Engineering as Chapter 150 of the Texas Civil Practices and Remedies Code requires when a plaintiff files a suit for damages arising out of the provision of professional services by a licensed or registered professional.

**1. Standards of Review and Applicable Law**

■ We review a trial court's order on a motion to dismiss under section 150.002 for an abuse of discretion. *Dunham Eng'g, Inc. v. Sherwin–Williams Co.*, 404 S.W.3d 785, 789 (Tex.App.–Houston [14th Dist.] 2013, no pet.). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *Id.* A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *Id.*

■ To the extent that our review involves the interpretation of a statute, we apply a de novo standard of review. *See Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex.2014); *Dun-*

*ham Eng'g*, 404 S.W.3d at 789. We construe statutory language to ascertain and effectuate legislative intent. *Dunham Eng'g*, 404 S.W.3d at 789. We rely on the statute's plain meaning as an expression of legislative intent unless a different meaning is supplied or is apparent from the context, or the plain meaning leads to absurd results. *Crosstex Energy Servs.*, 430 S.W.3d at 389–90. We consider statutes as a whole, rather than by their isolated provisions. *Morrison Seifert Murphy, Inc. v. Zion*, 384 S.W.3d 421, 427 (Tex.App.–Dallas 2012, no pet.) (citing *TGS–Nopec Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex.2011)). We may also consider the objective the Legislature sought to achieve through the statute, as well as the consequences of a particular construction. *TDIndustries, Inc. v. Rivera*, 339 S.W.3d 749, 752 (Tex.App.–Houston [1st Dist.] 2011, no pet.); Tex. Gov't Code § 311.023.

A plaintiff suing for damages "arising out of the provision of professional services by a licensed or registered professional" must file a certificate of merit with the complaint. Tex. Civ. Prac. & Rem. Code § 150.002(a).[4] A "licensed or registered professional" includes a licensed professional engineer or any firm in which a licensed professional engineer practices. *See* Act of May 17, 2009, 81st Leg., R.S., ch. 789, § 2, sec. 150.001(1), 2009 Tex. Gen. Laws 1991, *amended by* Act of May 15, 2013, 83d Leg., R.S., ch. 244, § 1, 2013 Tex. Sess. Law Serv. 985 (West) (current version at Tex. Civ. Prac. & Rem. Code § 150.001(1–a)).

3. We have jurisdiction over this interlocutory appeal under section 150.002(f) of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 150.002(f) (providing that in an action under Chapter 150, "[a]n order granting or denying a motion for dismissal is immediately appealable as an interlocutory order.").

4. Although portions of Chapter 150 have since been amended effective June 14, 2013, section 150.002 was unchanged by the amendment; therefore, we will cite to the current version of that section. Other relevant sections that have been amended will be identified as such.

When determining whether claims arise out of the provision of professional engineering services within the meaning of section 150.002, we look to the definition of the practice of engineering in the Occupations Code. *Rivera*, 339 S.W.3d at 754; *see* Tex. Civ. Prac. & Rem. Code § 150.001(3) (providing that "practice of engineering" has "the meaning assigned by Section 1001.003, Occupations Code."). The "practice of engineering" means "the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work." Tex. Occ. Code § 1001.003(b). Among other things, the practice of engineering includes "consultation, investigation, evaluation, analysis, planning, engineering for program management, providing an expert engineering opinion or testimony, engineering for testing or evaluating materials for construction or other engineering use, and mapping," as well as "a service, design, analysis, or other work performed for a public or private entity in connection with a utility, structure, building, machine, equipment, process, system, work, project, or industrial or consumer product or equipment of a mechanical, electrical, electronic, chemical, hydraulic, pneumatic, geotechnical, or thermal nature." *Id.* § 1001.003(c)(1), (c)(10).

■ If section 150.002 applies to a plaintiff's claims, the certificate of merit "shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional services, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim." Tex. Civ. Prac. & Rem. Code § 150.002(b). The purpose of the certificate of merit is to provide a basis for the trial court to conclude that the plaintiff's claims against a licensed or registered professional are not frivolous. *Dunham Eng'g*, 404 S.W.3d at 795–96; *Morrison Seifert Murphy, Inc.*, 384 S.W.3d at 425. The plaintiff's failure to file the affidavit in an appropriate case "shall result in dismissal of the complaint against the defendant" and the dismissal may be with prejudice. *Id.* § 150.002(e); *see Crosstex Energy Servs.*, 430 S.W.3d at 393 (holding that certificate of merit is a mandatory, but non-jurisdictional, filing requirement).

**2. Plaintiffs' Wrongful Death Claims Are Not Subject to Section 150.002's Certificate of Merit Requirement**

■ Jacobs Engineering argues that the plaintiffs' gross negligence claims are subject to section 150.002 because the plaintiffs' lawsuit is an action for damages and the claims, as pleaded, arise out of the engineering services provided to NASA by Jacobs Engineering, a licensed professional engineering firm. Jacobs Engineering emphasizes that the plaintiffs' petition alleges that Elsey "worked as a sound engineer and designed and built structures at the NASA facility in Clear Lake, Texas" where he "designed and built various structures and materials to be tested in the acoustics lab, which would ultimately be utilized by the Space Center for the various missions and projects."

In response, the plaintiffs contend that section 150.002 does not apply because their claims do not involve an error or omission in Jacobs Engineering's rendition of professional services or the practice of engineering; instead, their claims involve Jacobs Engineering's failure to provide the

now-deceased Elsey a safe workplace, warn him of the dangers associated with hazardous materials, and provide him with appropriate equipment to work with such materials. The plaintiffs maintain that their claims concern Jacobs Engineering's "duty as an employer regardless of the type of business it runs" and assert that the issue is one of "basic workplace safety when an employee must handle a hazardous material." The plaintiffs further argue that their claims do not involve either a duty or materials unique to engineering.

To resolve this issue, we must determine whether the plaintiffs' gross negligence claims, as pleaded, "aris[e] out of the provision of professional services by a licensed or registered professional" so as to require a certificate of merit. *See id.* § 150.002(a).[5] In support of their negligence and gross negligence claims as described above, the plaintiffs alleged that Jacobs Engineering committed numerous wrongful acts, including failing to provide Elsey and other employees adequate protection from the hazards associated with exposure to the carcinogenic-containing products, medical monitoring, a safe workplace, adequate safety equipment, adequate warnings, and adequate supervision and training. The plaintiffs further alleged that Jacobs Engineering had actual awareness of the extreme degree of risk associated with exposure to urea formaldehyde, phenol formaldehyde, wood dust, PAHs, PCPs, TCDDs, and other carcinogenic-containing products in the workplace, and nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Elsey by failing to act to minimize or eliminate these risks. Additionally, the plaintiffs alleged that Jacobs Engineering was at least substantially certain its invitees would be exposed to these products and made a conscious choice to allow these exposures to happen in the interest of profit at the expense of worker safety, and that, viewed objectively from the standpoint of Jacobs Engineering, these acts or omissions involved an extreme degree of risk of which it had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

As pleaded, the plaintiffs' allegations of negligence and gross negligence invoke the duties arising from the employment relationship between an employer and employee, not from any professional relationship giving rise to a heightened duty of care owed by a professional engineer. *See Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex.2006) (per curiam) (discussing employer's duty to use ordinary care to provide a safe workplace, including warning of hazards and providing appropriate safety equipment). Jacobs Engineering contends, however, that the plaintiffs' allegations concerning the nature of Elsey's employment demonstrate that the claims arise out of the engineering services provided by Jacobs Engineering to NASA. Specifically, Jacobs Engineering points to the following allegations from the plaintiffs' petition:

> While employed by [Jacobs Engineering and Lockheed Martin] from approximately 1999 through the date of his [death], the Deceased TIMOTHY D. ELSEY, worked as a sound engineer

---

**5.** In their pleading, the plaintiffs sought damages from the defendants based on theories of negligence and gross negligence, as well as claims of misrepresentation and conspiracy, concert of action, and fraud related to the "carcinogenic-containing products and/or materials." In the motion to dismiss, Jacobs Engineering sought dismissal of all of the plaintiffs' claims, but on appeal Jacobs Engineering asserts only that the trial court erred by not dismissing the plaintiffs' gross negligence claims. Therefore, we will focus on the plaintiffs' allegations relating to gross negligence.

and designed and built structures at the NASA facility in Clear Lake, Texas. The Deceased TIMOTHY D. ELSEY built various structures and materials to be tested in the acoustics lab, which would ultimately be utilized by the Space Center for various missions and projects. In particular, the Deceased TIMOTHY D. ELSEY built at least two big MDF/plywood structures called Anechoic chambers. These chambers were sound-proof structures where testing was performed to determine the suitability of materials used in space to withstand sound waves, in particular sound waves with very high decibels. The two structures were different in that one was smaller than the other. The smaller Anechoic chamber was built first, solely by the Decedent, and from utilizing sheets of MDF and plywood. All of the cutting, sanding, and construction was performed by the Deceased and at the direction of the Defendants. ... The larger chamber was for similar purposes and was constructed by the Deceased.

Jacobs Engineering argues that Elsey's work activities, as described by the plaintiffs, come within the Occupation Code's definition of activities that constitute the "practice of engineering" because they include "the evaluation and analysis of certain materials for suitability for use in the NASA space program" and reflect that Elsey "helped design and build an anechoic chamber that was used for the testing protocols of those materials," citing Texas Occupations Code subsections 1001.003(c)(1) and (c)(10).

Jacobs Engineering also cites to several cases for the general proposition that "if a plaintiff's claim for damages "implicates the special knowledge and training of a licensed or registered professional as defined by Chapter 150, it is a claim for damages arising out of the provision of professional services." *See, e.g., Lantz v. Higgins, Inc.*, No. 01–14–00208–CV, 2015 WL 1501790, at *2 (Tex.App.–Houston [1st Dist.] Mar. 31, 2015, no pet.); *CBM Eng'rs, Inc. v. Tellepsen Builders, L.P.*, 403 S.W.3d 339, 343 (Tex.App.–Houston [1st Dist.] 2013, pet. denied); *Carter & Burgess, Inc. v. Sardari*, 355 S.W.3d 804, 809–12 (Tex.App.–Houston [1st Dist.] 2011, no pet.). Based on these authorities, Jacobs Engineering asserts that "because the selection and use of certain materials for construction of the anechoic chambers as well as those used in the acoustical testing of materials for use in space implicate the special knowledge and training of a licensed or registered professional," the plaintiffs were required to comply with section 150.002's requirement that a certificate of merit be provided along with the plaintiff's complaint.

We understand Jacobs Engineering's argument to be that because Jacobs Engineering is a professional engineering firm and its employee, Elsey, was engaged in the practice of engineering on behalf of Jacobs Engineering's client, NASA, the plaintiffs' workplace-safety claims necessarily arise out of the provision of professional services so as to require the plaintiffs to provide a certificate of merit under section 150.002.[6] We have not found, and

---

**6.** Jacobs Engineering also makes an argument that the trial court should have dismissed the plaintiffs' claims based on a provision of the Occupations Code specifically applicable to NASA-related activities, *see* Tex. Occ. Code § 1001.066, but Jacobs Engineering did not make this argument in the trial court. Consequently, the argument was not preserved and we do not address it. *See Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 295 (Tex.App.–Fort Worth 2008, pet. denied) (declining to consider appellate argument not presented to trial court in motion to dismiss because it was not preserved for review).

neither party has cited, a case involving the application of the certificate-of-merit requirement of section 150.002 to similar workplace-safety claims against a professional engineering firm. And while it is conceivable that a particular case may present a set of circumstances in which an employee or his survivors may be required to provide a certificate of merit to support a claim that a licensed or registered professional breached the duties owed by an employer to an employee, we cannot agree that a certificate of merit would necessarily be required in every case or that it is required in this case.

As Jacobs Engineering acknowledges, the scope of 150.002(a)'s application to claims for damages "arising out of the provision of professional services" by a professional engineer or engineering firm is defined by the Legislature to encompass "any public or private service or creative work, *the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences* to that service or creative work." *See* Tex. Occ. Code § 1001.003(b) (emphasis added); *see also Carter & Burgess, Inc.*, 355 S.W.3d at 809 (deferring to the Legislature's definition of the practice of architecture in the Occupations Code "to define the scope of professional services provided by an architectural firm for purposes of determining whether a certificate of merit is required"). The Legislature's choice to use the phrase "arising out of" indicates that the certificate-of-merit requirement covers a smaller category of disputes than those "related to" the provision of engineering services. *See Sheldon v. Pinto Tech. Ventures, L.P.*, 477 S.W.3d 411, 415 (Tex.App.–Houston [14th Dist.] 2015, pet. pending). Section 150.002 further clarifies that the certificate of merit, when required, must address the errors or omissions of the engineer or firm

in providing professional engineering services, "including *any error or omission in providing advice, judgment, opinion, or a similar professional skill* claimed to exist . . . ." Tex. Civ. Prac. & Rem. Code § 150.002(b) (emphasis added); *see Dunham Eng'g*, 404 S.W.3d at 796 (explaining that the "core focus of section 150.002(b) is ascertaining and verifying the existence of errors or omissions in the professional services provided").

Thus, reading the statute as a whole, section 150.002 does not apply to every claim against a professional engineer or engineering firm, but only to those claims arising out of errors or omissions in providing professional engineering services— that is, services requiring the engineer's use of education, training, and experience in applying special knowledge or judgment. *See* Tex. Occ. Code § 1001.003(b); *Dunham Eng'g*, 404 S.W.3d at 793. *Cf. Bruington Eng'g Ltd. v. Pedernal Energy L.L.C.*, 403 S.W.3d 523, 529–30 (Tex.App.–San Antonio 2013, no pet.) (holding that plaintiff was required to provide a certificate of merit when all of its allegations against engineering firm with whom it contracted to supervise oil well fracturing treatment were based on firm's provision of those services). Jacobs Engineering argues that the selection and use of certain materials for the projects Elsey was assigned to complete constitutes the provision of engineering services and implicates the special knowledge and training of an engineer. But, whether section 150.002 applies in the context of a workplace-safety claim against a professional engineering firm is not determined by the type of work the employee performed for the engineering firm. Rather, the proper analysis is whether the claims for damages arise out of the engineering firm's provision of professional engineering services.

In this case, the plaintiffs do not claim that Jacobs Engineering negligently designed or constructed the anechoic chambers or other specialized structures, or that it chose improper materials for their construction. The plaintiffs instead allege that Jacobs Engineering failed to provide warnings about the dangers of working with those materials; failed to provide Elsey with appropriate safety equipment, such as a breathing apparatus, to prevent the inhalation of carcinogens; and failed to take other appropriate safety precautions. These allegations are directed to an employer's duty to use ordinary care in providing a safe workplace, not a duty arising from the special knowledge, education, and training of a licensed professional engineer. *See Elwood*, 197 S.W.3d at 794; *see also Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex.1993) ("The standard of conduct required of the employer is ordinary care based on general negligence principles."); *Kroger Co. v. Milanes*, 474 S.W.3d 321, 335 (Tex.App.–Houston [14th Dist.] 2015, no pet.) (reviewing employers' various duties to use ordinary care in providing safe workplace). Jacobs Engineering does not explain how an affidavit from a third-party sound engineer could shed light on whether these alleged errors and omissions were negligent. Further, we note that the Legislature did not define the practice of engineering to include providing a safe workplace. *See* Tex. Occ. Code § 1001.003(b), (c).

We conclude that the plaintiffs' gross negligence claims, as pleaded, do not arise out of Jacobs Engineering's provision of professional engineering services, but rather Jacobs Engineering's alleged breach of duties it owed to its employees generally, and to Elsey in particular, to provide a safe workplace. *Compare Rivera*, 339 S.W.3d at 755–56 (holding that elevator rider who asserted premises-liability claims against professional engineering firm that provided management services to premises owner was not required to provide certificate of merit because claims as alleged did not clearly arise out of the provision of professional engineering services); *RCS Enters., LP v. Hilton*, No. 02–12–00233–CV, 2013 WL 6795390, at *5 (Tex.App.–Fort Worth Dec. 19, 2013, no pet.) (mem. op.) (holding that homebuyers' claims against professional engineering firm acting as third-party inspector did not did not implicate the practice of engineering); *with UOP, L.L.C. v. Kozak*, No. 01–08–00896–CV, 2010 WL 2026037, at *6–9 (Tex.App.–Houston [1st Dist.] May 20, 2010, no pet.) (mem. op.) (holding that plaintiffs whose claims were based on failure to warn refinery employee of danger of asbestos exposure were required to provide certificate of merit when claims were alleged against defendant in its capacity as designer and general contractor of refinery).

We therefore hold that the trial court did not abuse its discretion in denying Jacobs Engineering's motion to dismiss based on the plaintiffs' failure to file a certificate of merit pursuant to Texas Civil Practice and Remedies Code section 150.002.

### CONCLUSION

We overrule Jacobs Engineering's sole issue and affirm the trial court's judgment.