**Affirmed and Opinion filed September 19, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00017-CV

---

**ANNA DORSEY, Individually and as Representative of the Estates of GLORIA MOORE (Deceased) and SAM MOORE, Jr. (Deceased), BETTY HORACE, Individually and as Representative of the Estate of THOMAS HORACE (Deceased), PATRICK HORACE, KRISTEN GILMORE, Individually and as Representative of the Estate of JODIE ARCHIE (Deceased), KRISHONDE ALLEN, ESTELLA AMES, DEBRA AMMONS, EDWIN AMOS, GLORIA BAPTISTE, ALTON BERRY, JIMMY BOOKER, ROBERT BOOKER, BRENDA BRANCH, JOHNTER BRANTLEY, DOROTHY BROOKS, HILLMAN CALVIN, IVIA CLAY, BENJAMIN COOKESY, WILLIAM COOKSKY, DIANNA CORMIER JACKSON, AUTREA DAVIS, KAREN DICKEY, MERVE EUELL, PHYLLIS FARR, ROY FITZPATRICK, MOZELLE FLANNIGAN, KATHY GABRIEL, JIMMY GALENTINE, JOEL GREEN, ADELL GUILLORY, LESTER HARRIS, WILLIE HARRIS, KERRY LYNN HASKETT, RICHARD HENRY, CARMELITA HIGGINS, LATINA HILL, HAROLD HORACE, HERBERT HORACE, TAMARA JACKSON, JAMES JOHNSON, RONNIE JOHNSON, KATHERINE JONES, DANNY LEWIS, HARRY DEAN LEWIS, LORENNIA LINDSEY, ELIZABETH NICKELS, IDA OBRIEN, ROBERT PALMER, SEPERIA PRESTON, RUBY REYNOLDS, BARRY RHODES, ALLEN RICHARDSON, DONNA RICHARDSON, DWIGHT RICHARDSON, JOHNNY RISTON, RODNEY RUSHING, DAVID RYAN, LISA SAMUEL, ANDREA SHIELDS, SONYA SMITH, HATTIE SWINT,**

**RODNEY THOMAS, SHERRY THOMAS, GERALD TURNER, LARRY TURNER, SHIRLEY LEWIS VALLIER, DALE VANWRIGHT, ELNORA VICTOR, JESSE VICTOR, CHANTA VISTON, LAWRENCE WALKER, JOHN WALKER, OPAL WALKER, RENEE WALKER, LOU PRICE-WALKER, CONNIE WALTON, LADETRIA WESLEY, EDITH WILBURN, SANFORD WILLIAMS, TANYA WOOTEN, BOBBY WORTHY, PATRICIA WORTHY, and JAMES YOUNG, Appellants**
**V.**

**ENVIRONMENTAL RESOURCES MANAGEMENT SOUTHWEST, INC. and PASTOR, BEHLING & WHEELER LLC, Appellees**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-07396**

---

**OPINION**

Appellants sued Union Pacific Railroad Company and the two appellees—Environmental Resources Management Southwest, Inc. (ERM) and Pastor Behling & Wheeler LLC (PBW)—for negligence, negligent misrepresentation, and fraudulent concealment stemming from environmental contamination at the Union Pacific Englewood Rail Yard near residential neighborhoods in Houston.[1] Appellees filed motions to dismiss under the certificate of merit statute, *see* Tex. Civ. Prac. & Rem. Code § 150.002, and the trial court dismissed appellants' claims without prejudice. Appellants filed this interlocutory appeal.

It is undisputed that appellees are registered professional engineering firms and that appellants did not file a certificate of merit with their petition. The key issue in this case is whether appellants' claims arise out of the provision of professional engineering services.

---

[1] *See generally Union Pac. R.R. Co. v. Dorsey*, 651 S.W.3d 692, 696–98 (Tex. App.—Houston [14th Dist.] 2022, no pet.).

We hold that PBW and ERM demonstrated that appellants' claims arise out of the provision of professional engineering services. Thus, we affirm the trial court's orders dismissing the claims against PBW and ERM.

## I.   LEGAL PRINCIPLES

In an action for damages "arising out of the provision of professional services by a licensed or registered professional," the claimant must file with their petition an affidavit from the same type of professional setting forth each theory of recovery and its factual basis. *See* Tex. Civ. Prac. & Rem. Code §§ 150.001(1-c), 150.002(a)–(b). A "licensed or registered professional" includes a licensed professional engineer or any firm in which they practice. *Id.* § 150.001(1-c). The term does not include a licensed professional geoscientist. *See id.* A claimant's failure to comply with this "certificate of merit" statute results in dismissal. *Id.* § 150.002(e). *See generally LaLonde v. Gosnell*, 593 S.W.3d 212, 220 (Tex. 2019).

To determine whether a claimant's claims arise out of the provision of professional engineering services within the meaning of Section 150.002, we look to the definition of the "practice of engineering" in the Occupations Code and the allegations from the claimant's petition. *See LJA Eng'g Inc. v. Santos*, 652 S.W.3d 916, 921 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *see also Terracon Consultants, Inc. v. N. Price Commc'ns, Inc.*, No. 01-22-00755-CV, 2023 WL 2316351, at *4 (Tex. App.—Houston [1st Dist.] Mar. 2, 2023, no pet.) (mem. op.) ("To determine whether and how § 150.002 applies, we consider the live pleadings when the trial court ruled on the motion to dismiss." (quotation omitted)). The "practice of engineering" means "the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying

3

special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work." Tex. Occ. Code § 1001.003(b); *LJA Eng'g*, 652 S.W.3d at 920. This definition includes "any other professional service necessary for the planning, progress, or completion of an engineering service." Tex. Occ. Code § 1001.003(c)(12).[2]

The certificate of merit statute does not apply to all claims against a professional engineer or engineering firm, but only those claims "arising out of" the provision of engineering services. *Jacobs Eng'g Grp., Inc. v. Elsey*, 502 S.W.3d 460, 467 (Tex. App.—Houston [14th Dist.] 2016, no pet.). "Claims arise out of the provision of professional engineering services if they implicate the engineer's education, training, and experience in applying special knowledge or judgment." *LJA Eng'g*, 652 S.W.3d at 921; *see also Jacobs Eng'g*, 502 S.W.3d at 467 (reasoning that claims arise out of the provision of professional engineering services when the "services requir[e] the engineer's use of education, training, and experience in applying special knowledge or judgment").

When reviewing the claimant's petition, the alleged mal-acts themselves need not amount to the provision of engineering services. *LJA Eng'g*, 652 S.W.3d at 920 (citing *Jennings, Hackler & Partners, Inc. v. N. Tex. Mun. Water Dist.*, 471 S.W.3d 577, 581 (Tex. App.—Dallas 2015, pet. denied)). Generally, we eschew the use of artful pleading when determining the nature of a party's claim. *Cf. Pinot*

---

[2] The practice of engineering also includes, among other things, (1) "design, conceptual design, or conceptual design coordination of engineering works or systems"; (2) "planning the use or alteration of land or water or the design or analysis of works or systems for the use or alteration of land or water"; (3) "engineering for construction, alteration, or repair of real property"; (4) "engineering for review of the construction or installation of engineered works to monitor compliance with drawings or specifications"; and (5) "a service, design, analysis, or other work performed for a public or private entity in connection with a utility, structure, building, machine, equipment, process, system, work, project, or industrial or consumer product or equipment of a mechanical, electrical, electronic, chemical, hydraulic, pneumatic, geotechnical, or thermal nature." Tex. Occ. Code § 1001.003(c)(2), (4), (7), (9), (10).

*Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 439–40 (Tex. 2017) (reasoning that when a forum selection clause applied to disputes "arising out of" the agreement, the court would not encourage "artful pleading" by denying its application when the claimant's essential allegations were inextricably enmeshed or factually intertwined with the underlying contract); *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010) (noting that "artful pleading" cannot alter the nature of a claim in the context of determining whether the expert-report requirement applies to a health care liability claim).

Although this court has not squarely addressed the parties' burdens on a Chapter 150 motion to dismiss, we agree with our sister courts that the movant, as the party seeking affirmative relief, has the burden to prove that the claimant's action for damages arose out of the provision of professional engineering services. *See De Leon v. Baker*, No. 10-22-00378-CV, 2023 WL 6885052, at *3 (Tex. App.—Waco Oct. 19, 2023, no pet.) (reasoning that the movants "had the burden to establish that section 150.002 applied"); *FAI Eng'rs, Inc. v. Logan*, No. 02-20-00255-CV, 2020 WL 7252315, at *4 (Tex. App.—Fort Worth Dec. 10, 2020, no pet.) ("[T]he burden of proof remained with [the movant] to demonstrate that [the claimant]'s suit met the requisites of Section 150.002(a) such that [the claimant] was required to file a certificate of merit").

We review a trial court's order on a Chapter 150 motion to dismiss for an abuse of discretion. *LJA Eng'g*, 652 S.W.3d at 919. A trial court abuses its discretion if it fails to analyze or apply the law correctly. *Jacobs Eng'g*, 502 S.W.3d at 463. If the relevant facts are undisputed, then the issue on appeal is the proper construction and application of statutory provisions, which we review de novo. *LJA Eng'g*, 652 S.W.3d at 919. When the facts are disputed, we defer to the trial court's resolution. *See Superior Indus., Inc v. Kallus*, No. 05-23-00219-CV,

2024 WL 1089473, at *2 (Tex. App.—Dallas Mar. 13, 2024, no pet.); *see also LJA Eng'g*, 652 S.W.3d at 919 ("Deference must be afforded to the trial court's disposition of disputed facts . . . ." (quoting *LaLonde v. Gosnell*, 593 S.W.3d 212, 220 (Tex. 2019))); *WCM Grp., Inc. v. Camponovo*, 305 S.W.3d 214, 221 (Tex. App.—Corpus Christi 2009, pet. dism'd) (reasoning that when the trial court was presented with conflicting evidence about whether a defendant was an engineer under the statute, the trial court was entitled to resolve the conflict).

## II.   BACKGROUND

### A.   Appellants' Allegations

In their first amended petition, appellants allege claims against PBW and ERM for negligence, negligent misrepresentation, and fraudulent concealment. Appellants identify PBW and ERM as Union Pacific's "consulting geologists," who have "misrepresented the extent of the threat posed by [the pollution], concealing the true nature of the hazard in reports to the TCEQ[3] and communications with the public in order to obtain required permits."

Regarding negligence, appellants allege that PBW and ERM "provided Geoscience services to Union Pacific (as required by TCEQ), specifically related to environmental and remediation projects." Appellants allege that PBW and ERM were negligent by failing to properly characterize, study, appraise, investigate, analyze, review and evaluate, and make proper recommendations regarding "geoscientific components of the environmental and pollution remediation projects performed."[4]

---

[3] That is, the Texas Commission on Environmental Quality.

[4] These allegations generally track the Occupations Code's authorized activities for a geoscientist working on an environmental and pollution remediation project, distinguished from the prohibited activities related to engineering:

6

Regarding negligent misrepresentation, appellants allege that PBW and ERM "made representations to governmental agencies and Plaintiffs regarding the nature of the air, soil, and water contamination caused by creosote and toxic chemicals and their efforts to mitigate and monitor air, soil and water contamination caused by creosote and toxic chemicals."

Regarding fraudulent concealment, appellants allege that PBW and ERM "fraudulently concealed the scope and dangers of the air, soil and water contamination caused by creosote and toxic chemicals from Plaintiffs, the government and the general public." Appellees "knew creosote and toxic chemicals contaminated air, soil and water on and near Union Pacific's Englewood Rail yard" and "knew of the hazards to human health posed by creosote and toxic chemicals, including the risk of disease, cancer and death." Finally, "[t]o avoid liability and obtain operating permits from governmental agencies, Defendants intentionally concealed the scope and dangers associated with the air, soil and water contamination caused by creosote and toxic chemicals."

---

(h) With regard to an environmental and pollution remediation project, this chapter:

(1) permits the characterization, study, appraisal, investigation, analysis, and geoscientific review and evaluation of and the making of recommendations regarding the geoscientific components of the project by a licensed geoscientist; and

(2) does not permit the design, development, or performance of engineering review and evaluation of a component of the project consisting of an engineered structure, work, or process or a related constructed improvement by a licensed geoscientist.

Tex. Occ. Code § 1002.004(h).

## B.     PBW's Motion to Dismiss

PBW filed a motion to dismiss[5] and attached evidence, including an affidavit from its former president and a licensed professional engineer, Eric Pastor.  He testified that PBW is an "environmental consulting firm that has provided environmental consulting services" since 2006 to Union Pacific regarding the Houston Wood Preserving Works Site (i.e., the Englewood Rail Yard or "the Project").  He testified, "PBW's environmental consulting services for the Project include site investigation activities, environmental analysis, consultation with Union Pacific, remediation evaluation, design, planning, construction contract administration, and the preparation of a response action plan and other technical submissions."  He testified that PBW's environmental consulting services "include both engineering and geological services."  All of PBW's services for the Project have been done "under [Pastor's] direction and supervision as a licensed Professional Engineer."  He testified that all of PBW's services for the project, "including any of the geological services performed by other PBW personnel who work on the Project, were performed as part of the planning, progress, and completion of PBW's engineering services for the Project."  He testified that the services PBW performed for the project "required [his] education, training, and experience in the field of engineering."

PBW also filed an affidavit from a professional geoscientist, Eric Matzner, who has worked on the Project since 2006.  He testified that Union Pacific or its predecessor obtained a hazardous waste permit from the TCEQ in 1994 and a revised or renewed permit in 2005.  The permit required Union Pacific to "conduct

_____

[5] PBW and ERM initially filed motions to dismiss in 2020 in response to appellants' original petition.  After appellants filed an amended petition and the lawsuit was stayed during the pendency of an appeal from a ruling on Union Pacific's motion to dismiss under the Texas Citizens Participation Act, PBW and ERM again filed motions to dismiss in 2022.  We focus, as the parties have, on the substance of the 2022 motions.

the Corrective Action and Ground-Water Monitoring Programs." PBW has performed work for Union Pacific pursuant to a written contract and a series of work orders issued by Union Pacific. The contract directs PBW to provide "environmental consulting, contracting and engineering."[6] Change orders further describe some categories of PBW's work to include "engineers and scientists performing tasks such as: task management, data analysis, data management, data verification, oversight of field work, permit writing, procurement, report writing, research, engineering design, site inspections, subcontract bidding, and subcontractor management." Matzner testified that Texas registered professional engineers created and stamped with their official seals numerous documents created during the course of PBW's work for Union Pacific, including "as-built drawings" for a proposed remedial excavation, non-aqueous phase liquid collection system, and soil cap and recovery improvements.

PBW filed additional documents as exhibits, including the 2005 TCEQ permit. The permit provided "general design, construction, and operation requirements," to include the construction and installation of wells on the property. Construction was required to follow design specifications set out by the TCEQ. The permit authorized Union Pacific to submit a "Response Action Plan (RAP)" that would require "detailed final proposed engineering design" and monitoring plans.

---

[6] In their reply brief on appeal, appellants suggests that this court should not consider the contract when determining whether appellants' claims arise out of the provision of engineering services because a certificate of merit must be filed before discovery, citing *TDIndustries, Inc. v. Citicorp N. Am., Inc.*, 378 S.W.3d 1, 6 (Tex. App.—Fort Worth 2011, no pet.) ("[T]he proper approach when determining whether a certificate of merit is required is to look solely at the pleadings to determine the nature of the claim and not at discovery between the parties."). Appellants have not shown, and our review of the record has not revealed, that they preserved any error regarding the trial court's consideration of the evidence, so we will consider it. *See* Tex. R. App. P. 33.1.

After appellants responded to the motion to dismiss, PBW filed a reply with additional evidence, including a supplemental affidavit from Matzner. He testified about PBW's preparation of a RAP in 2015, which proposed the "installation of an engineered soil cap and other engineered physical control measures intended to prevent exposure to impacted soil" at the rail yard. The 2015 RAP "included Texas Professional engineered sealed drawings for a soil cap and other physical control measures intended to prevent exposure to affected soil on and near the Facility. Matzner testified, "Under the supervision of PBW engineers, contractors began work on the containment measures proposed in the 2015 RAP in January 2016 and completed the work in May 2016." PBW prepared and submitted to the TCEQ a completion report that included "engineered as-built drawings of the containment structures and other improvements" to the site. PBW prepared another report in 2019 that included "engineered as-built drawings [of] an interim response action."

## C.    ERM's Motion to Dismiss

ERM filed a motion to dismiss and reply and attached evidence, including the affidavit of Peter Gagnon, an engineer who worked on the Project. He testified that ERM previously provided "environmental consulting and engineering services" for Union Pacific. He testified, "The work ERM performed at the Houston Wood Preserving Works facility required special education, training, and experience in the fields of environmental science and environmental engineering."

ERM also attached a few pages from annual and semiannual monitoring reports that were signed by Gagnon as a "P.E." and another associate with the designation "P.G."[7]

---

[7] The parties appear to agree that generally P.E. stands for professional engineer while P.G. stands for professional geoscientist.

**D. Appellants' Response**

Appellants submitted evidence that PBW and ERM are licensed by the Texas Board of Professional Geoscientists and are geoscience firms. Appellants filed a number of reports prepared by PBW and ERM, some of which were allegedly submitted to the TCEQ, which bear only the signatures or seals from professional geoscientists and not professional engineers. Appellants submitted the declaration of Heidi Woelfel, a professional geoscientist. She testified that a geoscientist "is required to seal professional geoscientific work offered to the public for the purpose of showing the work was performed under the responsible charge of a licensed P.G. Upon sealing geoscience work product, the P.G. takes full responsibility for the geoscience services provided."

**E. Trial Court's Ruling**

The trial court granted PBW's and ERM's motions to dismiss and dismissed appellants' claims against those defendants.

**III. ANALYSIS**

Appellants contend that the trial court erred because appellants' claims arise out PBW's and ERM's provision of geoscience services, not engineering services. Appellants note that the certificate of merit statute does not apply to the provision of geoscience services, *see* Tex. Civ. Prac. & Rem. Code ch. 150, and the geoscientific components of reports submitted to the TCEQ were required to be signed and sealed separately by geoscientists. *See* Tex. Admin Code § 335.553(g) ("All engineering and geoscientific information submitted to the agency shall be prepared by, or under the supervision of, a licensed professional engineer or licensed professional geoscientist, and shall be signed, sealed, and dated by qualified professionals as required by the Texas Engineering Practice Act and the

11

Texas Geoscience Practice Act and the licensing and registration boards under these acts."). Separate and apart from professional engineers, the regulation of professional geoscientists is controlled by a different board and governed by a different chapter of the Occupations Code. *See* Tex. Occ. Code ch. 1002 (Texas Geoscience Practice Act).

Appellants acknowledge that PBW and ERM hold dual registrations as professional engineering firms and professional geoscience firms. Appellants contend this case is most similar to *RCS Enterprises, LP v. Hilton*, No. 02-12-00233-CV, 2013 WL 6795390 (Tex. App.—Fort Worth Dec. 19, 2013, no pet.) (mem. op.). In that case, the court of appeals affirmed the trial court's denial of a motion to dismiss when the defendant initially performed engineering services by designing and creating a foundation plan for a home, but the plaintiffs' claims were based on that same defendant's subsequent inadequate inspection of the foundation as a third-party inspector. *See id.* at *4–5.

Initially, we note that the court of appeals in *RCS Enterprises* affirmed, i.e., found no abuse of discretion, while appellants urge the opposite conclusion here, i.e., that the trial court abused its discretion. Furthermore, the court held that Section 1001.003(c)(12) of the Occupations Code—which states that the practice of engineering includes "any other professional service necessary for the planning, progress, or completion of an engineering service"—did not apply because the third-party inspection was not necessary to plan, progress, or complete an engineering service. *See RCS Enters.*, 2013 WL 6795390, at *5.

Here, PBW's and ERM's affidavits and supporting documents amount to some evidence that their provision of geoscience services was necessary to plan, progress, or complete engineering services. *See* Tex. Occ. Code § 1001.003(c)(12). Both appellees adduced evidence that they performed

12

engineering services in addition to geoscience services, and their services required special education, training, and experience in the field of engineering. *See id.* § 1001.003(b). The trial court did not abuse its discretion by finding that appellants' claims arise out of the provision of professional engineering services based on appellants' allegations concerning appellees' "pollution remediation projects" and their "efforts to mitigate" the contamination in the course of "obtain[ing] operating permits" from the TCEQ. Appellants' claims "implicate" appellees' provision of professional engineering services, *see LJA Eng'g*, 652 S.W.3d at 920–21, and are "inextricably enmeshed" and "factually intertwined" with appellees' provision of professional engineering services, *cf. Pinot Tech. Ventures*, 526 S.W.3d at 439–40.

Appellants' sole issue is overruled.

## IV.  CONCLUSION

The trial court's orders dismissing appellants' claims against PBW and ERM are affirmed.

/s/     Ken Wise
Justice

Panel consists of Justices Wise, Jewell, and Bourliot.

13